90 So.2d 477 (1956)
Maudle Mae STROUD, Plaintiff-Appellee,
v.
STANDARD ACCIDENT INSURANCE CO., Defendant-Appellant.
No. 8586.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1956.
Rehearing Denied November 29, 1956.
*478 Cook, Clark, Egan, Yancey & King, Shreveport, for appellant.
Russell E. Gahagan, Natchitoches, for appellee.
AYRES, Judge.
Plaintiff presents this claim on her own behalf for medical expenses and as natural tutrix of her minor daughter, Vernie Lee Stroud, for damages for personal injuries, pain and suffering, permanent disability and disfigurement occasioned by an automobile accident occurring December 14, 1955, on U. S. Highway 71 in the town of Campti, Louisiana.
Miss Stroud, 17 years of age, was riding in the Ford automobile driven by Sydonia Basco, now Mrs. Eugene Denler. Miss Basco had borrowed the automobile from Denler and, after visiting friends in Campti, returned to and entered the Highway, and after proceeding south for approximately 350 feet collided with an empty G.M.C. gravel truck owned by H. F. Womack and operated at the time by Alex Wilson. The left front of the Ford car collided with the left rear portion of the gravel truck, knocking the rear wheels off and from underneath the body of the truck, the bed or body falling to the pavement.
There were charges and countercharges of negligence against each of the drivers as to the proximate cause of the accident, such as excessive speed, failure to keep a proper lookout or to maintain proper control of the vehicles, driving on the wrong side of the highway and operating motor vehicles without adequate brakes and/or without applying said brakes.
The action against the Globe Indemnity Company, an original defendant, as the public liability insurer of the Womack truck, was abandoned by plaintiff and eventually dismissed.
From a judgment in plaintiff's favor for $5,391.65, defendant, Standard Accident Insurance Company, appealed.
On the question of liability, the principal issue concerns the lane of traffic in which the accident occurred. In resolving this question, a brief resume of the evidence is appropriate. A. F. Friday, who was only about 50 feet distant from the scene of the collision, testified that on hearing the noise made by the application of the brakes on the truck, his attention was directed towards the scene of the accident, which happened in his sight and only momentarily after he looked in that direction. According to his testimony, the Ford automobile was about three feet over the center of the highway when its front end collided with the rear left side of the truck. He saw the wheels knocked from underneath the truck. His estimation as to speed was 50 miles per hour for the Ford and 45 miles per hour for the truck.
Alex Wilson, the truck driver, testified he saw the car for some distance on its side of the highway but that when it approached within about 100 feet the car left its righthand *479 lane, veered across the center line onto its left-hand lane, and that, although he swerved his truck to the right, he was unable to clear the path of the oncoming Ford before it struck the truck in its lane of travel. His estimation of the speed of the Ford was about 50 miles per hour, that of his own vehicle 40 to 45 miles per hour.
P. W. Hilton, a state trooper, who arrived at the scene of the accident before the vehicles were removed, testifying from his investigation, said that the accident occurred in the truck's lane of travel about three feet beyond the center line of the highway, as shown by skid marks of the truck made from the application of the brakes to the impact of the collision.
Mrs. Denler, the driver of the Ford, testified that the Ford was being operated at about 20 miles an hour and on her side of the highway when, on meeting the truck, the driver applied his brakes and skidded the truck to its left and into her traffic lane, causing the accident. She did not apply her brakes before the impact.
Trooper H. Q. Byrd testified that he interviewed Miss Basco, now Mrs. Denler, in a Natchitoches clinic about 30 minutes following the accident, where she told him she was driving pretty fast, about 50 miles per hour, and that the accident happened so fast she did not know what happened.
Plaintiff's minor daughter, for whose benefit this action was instituted, gave contradictory testimony in connection with the occurrence of the accident and its location, maintaining the speed of the car was 20 miles per hour and that the driver was careful. She at first maintained that the accident happened in the Ford's lane of travel when the truck swerved to the left in front of and striking the car. This testimony was consistent with a written statement made by her December 17, 1955, in which she said the driver was operating her car properly, and that the accident was caused by the fault of the truck driver in swerving his car into their lane of travel. Subsequently, she testified, however, that she became confused as a witness in first testifying and that she really did not know on which side of the highway the accident occurred, and under cross-examination denied seeing the truck swerve to its left and onto its left lane of traffic.
Taking into consideration the testimony of Friday, Hilton and Wilson and the physical facts, such as the skid marks of the truck, entirely in its proper lane, continuing to the point of impact therein, the conclusion is inevitable that the accident happened in the truck's lane of traffic and on the left or wrong side of the highway for the Ford automobile. The fact that the rear truck wheels were knocked off and from underneath the truck is persuasive that the speed of the car was more probably 50 miles per hour, as testified by the aforesaid witnesses, rather than 20 miles per hour as claimed by the driver and plaintiff's daughter.
On the matter of the occurrence of the accident, Miss Stroud's testimony is inconsistent with the physical facts and contrary to the testimony of other witnesses who claim to have witnessed the accident. It is urged that her testimony is crystal clear; that she has completely absolved Mrs. Denler of any neglect, and that, having so testified, she is bound by her testimony, exonerating the driver of the car in which she was a guest from all negligence. In support of this contention defendants rely upon LSA-C.C. art. 2291, which reads as follows:
"Art. 2291. The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
"It amounts to full proof against him who has made it.
"It can not be divided against him.
"It can not be revoked, unless it be proved to have been made through an error in fact.

*480 "It can not be revoked on a pretense of an error in law."
Appellant also cites Thompson v. Haubtman, 18 La.App. 119, 137 So. 362. There a collision was involved between a Ford and a Cadillac. The plaintiff was a guest passenger in the Ford owned and driven by Miss Ruth Haubtman. Of the three defendants condemned by judgment for the injuries allegedly sustained by plaintiff, only Miss Haubtman appealed. In replying upon the aforesaid article of the Code in reversing the judgment as to that defendant, the court said:
"A consideration of the conflicting testimony in the record raises considerable doubt in our minds concerning the correctness of the holding of our brother below to the effect that Miss Haubtman was at fault, but we are relieved from the necessity of weighing this testimony, because the description of the accident given by plaintiff herself completely exonerates Miss Haubtman from all responsibility."
Upon the facts of that case, we are in accord with the court's holding. Plaintiff clearly and unequivocably, throughout her testimony, wholly and completely exonerated Miss Haubtman from any act of negligence. Her statements were straightforward and unqualified. No attempt was made to withdraw her statements or to qualify her testimony in any manner. In those respects the instant case is distinguishable.
We do not find that that decision or the aforesaid Codal provision are particularly applicable to the facts of the present case. In the first place, considering Miss Stroud's testimony as a whole, as we are enjoined to do by the article of the Code, the conclusion is inescapable that her statements neither establish liability on the part of Mrs. Denler nor exonerate her from liability. From the conflicting and contradictory character of her testimony and from her demeanor and actions as a witness, as can be easily gleaned from the record, it can not be concluded that her testimony establishes either of these facts. As stated, we are prohibited from taking into consideration only one line of her testimony, that is, that which is most favorable to defendant, and disregard everything else she may have testified. From a consideration of the whole and taking into account all the facts and circumstances surrounding the giving of her testimony, we are, however, of the opinion that as to the issue and question of liability, her testimony should be disregarded entirely, which has been the course pursued in resolving the issues in this case.
For another reason, the Codal provision does not entirely and particularly have application here. Mrs. Maudie Mae Stroud, mother and natural tutrix of Vernie Lee Stroud, is the party plaintiff. She has a claim of her own growing out of the accident involved, that is, for the expense for the medical and professional treatments administered to her minor daughter for the injuries sustained by her. Plaintiff is not bound to rest the outcome of her case upon the testimony of any particular witness. She may rely to establish her claim upon the preponderance of all the testimony introduced in the case. This we find, amply and without otherwise serious ground for contention, supports her claim.
The next consideration is one of quantum. No objection is made to the correctness of the medical expense incurred of $391.65. It is seriously urged, however, that the award for the daughter's personal injuries is excessive.
Miss Stroud is a young girl of 17 years of age. She sustained multiple cuts on her forehead and face and in the region of her left eye. A portion of her left eyelid was torn away and the testimony discloses that she fails to have a complete closure of that eye by 1/16th of an inch. There is also a pronounced scar on the eyelid, as shown by photographic films offered in evidence. Dr. *481 R. R. Sills, to whose clinic she was carried immediately following the accident, was unable to recall the number of sutures taken on Miss Stroud's wounds. She testified there were more than 30.
Miss Stroud consulted Dr. L. C. Butler of Shreveport relative to plastic surgery and an operation to relieve the unsightly appearance of the scars was performed by Dr. M. L. Jarrell of Alexandria. That she suffered considerable pain and discomfort is evident from the record. That there is some permanent disfigurement is also evident from the record.
It is to be noted, however, that neither Dr. Butler nor Dr. Jarrell testified in the case or that their depositions were taken. These parties were no doubt in a position to give expert testimony as to the disfigurement following plastic surgery. The failure of the plaintiff to obtain the testimony of these doctors creates a strong presumption that their testimony, had it been produced, would not have been favorable to plaintiff's case. Rider v. R. P. Farnsworth Co., Inc., La.App., 61 So.2d 204; Moore v. Natchitoches Coca Cola Bottling Co., La.App., 32 So.2d 347; Gunter v. Alexandria Coca Cola Bottling Co., Limited, La.App., 197 So. 159; Comforto v. Cloverland Dairy Products Co., Inc., La.App., 194 So. 43.
We do not deem it necessary or that it will serve any useful purpose to compare or distinguish this case on the matter of the pain and suffering, disability and disfigurement from the cases cited by both plaintiff and defendant. From our review of the record we are convinced that the award is excessive and should be reduced by $2,500.
For the reasons assigned, the judgment appealed is amended by reducing the award in plaintiff's favor to $2,891.65, and, as thus amended, is affirmed; plaintiff to pay the costs of this appeal, all other costs to be paid by the defendant.
Amended and affirmed.