119 So.2d 671 (1960)
Mrs. Mabel BOWERS, Plaintiff-Appellant,
v.
HARDWARE MUTUAL CASUALTY COMPANY et al., Defendant-Appellant.
No. 9181.
Court of Appeal of Louisiana, Second Circuit.
March 22, 1960.
*672 Ralph E. Halliburton and Smallenberger, Eatman & Morgan, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for Hardware Mut. Cas. Co., defendant-appellant.
Love & Rigby, Shreveport, for Yellow Cab Co. of Shreveport, Inc., defendant-appellee.
AYRES, Judge.
This is an action in tort arising out of a motor vehicle collision at the intersection of Herndon Avenue and Creswell Street in the City of Shreveport.
Involved in the collision were a Chevrolet automobile, owned and operated at the time by Miss Fannie Lou Davis, with whom plaintiff and Mrs. Nell Shipp were guest passengers, all seated on the front seat with plaintiff on the right-hand side, and a taxicab of the Yellow Cab Company of Shreveport, Inc. Made defendants were Miss *673 Davis' public liability insurer and the cab company.
Negligence charged to each of the drivers, and relied upon by plaintiff for recovery, consists of their alleged failure to make proper observation of the traffic conditions or to keep their vehicles under control, and of excessive speed. Miss Davis is further alleged to have failed to heed the stop sign before entering the intersection; and the driver of the cab is alleged to have failed to pass to the rear of the Davis car or to stop in order to prevent the collision. Each of the defendants denies negligence attributable to its own driver and asserts that the proximate cause of the accident was the negligence of the other.
Trial was had before a jury. By its verdict, negligence charged to Miss Davis was held to constitute the sole and proximate cause of the accident and, pursuant to said verdict, there was judgment in plaintiff's favor for $8,500 against the defendant, Hardware Mutual Casualty Company. The driver of the taxi was exonerated from liability and plaintiff's action, as against the Yellow Cab Company of Shreveport, Inc., was dismissed. From the judgment thus rendered and signed, the defendant, Hardware Mutual Casualty Company, appealed suspensively and devolutively to this court. Plaintiff also perfected a devolutive appeal. The appeals, therefore, present, for determination, issues as to the defendants' liability and, if those issues are resolved adversely to defendants, or either of them, a question of quantum.
The record develops these facts as to the location of the accident and conditions immediately preceding its occurrence. Creswell Street runs in a general north and south course and, by city ordinance, traffic thereon has superiority of right over traffic from intersecting streets. Traffic is further controlled by a stop sign on Herndon Avenue. Each of the streets at the intersection had a width of 37 feet from curb to curb, except Herndon had a width of 29 feet west of the intersection. At the time of the accident, occurring at approximately 9:00 p. m. July 21, 1958, the street surfaces were wet and slippery from rain which continued in a mist. Immediately prior to the collision the Davis car was proceeding in a westerly direction on Herndon, the taxi south on Creswell. The accident occurred slightly west of the center of the intersection.
The intersection with Herndon Avenue may properly be designated a blind corner, particularly as to westbound traffic on Herndon and southbound traffic on Creswell, because of a cinder-block retaining wall 2.8 feet in height erected on the property line at the northeast corner of the intersection. Obscurity to one's view is further increased by the ground elevation of one foot above the height of the retaining wall and by the location of shrubbery and large trees.
The facts as to the occurrence of the accident may be briefly stated. The taxi struck the rear end of the Davis vehicle, skidding it to the southwest corner of the intersection, striking a pole, after which it continued several feet therefrom. The taxicab spun around, the left rear coming to rest against the west curb on Creswell immediately south of the intersection and headed in a northeasterly direction.
According to Johnny Wheeler, driver of the taxi, he was proceeding south on Creswell at approximately 30 miles per hour, following an Oldsmobile, when, on reaching the intersection with Herndon, the Oldsmobile proceeded across the intersection and immediately behind it appeared the Davis automobile crossing Creswell, the sudden approach of which afforded him neither time, distance, nor opportunity to do anything effectively to avoid or prevent the impending collision. He did endeavor, however, to avoid the collision by swerving to his left, but, nevertheless, struck the right rear of the Chevrolet automobile.
The testimony of plaintiff, Miss Davis, and Mrs. Shipp as to whether Miss Davis stopped and/or looked for approaching *674 traffic is most confusing. While all three testified Miss Davis stopped before entering the intersection, it does not appear with any degree of certainty where she stopped, if she did, whether at the stop sign, where her vision was obscured as to traffic approaching from her right by the blind corner, or what her movements actually were thereafter. Additional uncertainty is shown by the fact that neither Mrs. Shipp nor plaintiff, particularly Mrs. Shipp, made further observation or was able to relate any other facts occurring immediately prior to the actual impact other than they, in their own minds, were positive Miss Davis stopped. Miss Davis' testimony adds little to clarify the confusion. True, she testified she stopped and looked, but this appears predicated largely on her custom of stopping and looking without any independent recollection as to this particular incident. Even though, if it be granted that she stopped and looked before entering the intersection, it could only be concluded that the performance of these duties was only perfunctory and she clearly failed to heed the approaching taxicab which she saw, or should have seen, and, by its near approach or entrance into the intersection, should have accorded the right of way.
According to the police officers who investigated the accident immediately after its occurrence, Miss Davis' car skidded 30 feet before the impact and travelled 20 feet thereafter to the southwest corner of the intersection, the left rear fender striking a telephone pole, causing the car to bounce off and continue 10 feet further westward. The taxi continued 38 feet beyond the point of impact and came to rest, as aforesaid, against the west curb of Creswell Street immediately south of the intersection. Moreover, one of the officers testified, from his report made at the time, that Miss Davis stated she stopped for the stop sign, after which she proceeded into the intersection without seeing the approaching taxi because of the retaining wall at the northeast corner of the intersection, blocking her vision.
By the jury's verdict and the judgment of the court, the taxi driver was exonerated from fault. The evidence, in our opinion, clearly supports that conclusion. It is not shown that he was exceeding the speed limit fixed by city ordinance at 35 miles per hour nor that his speed was unreasonable under the existing circumstances; nor does the evidence establish that he failed to keep or maintain a proper lookout or to make proper observation of traffic conditions as he approached this intersection. Moreover, he was proceeding on a right-of-way street. Had he observed the approach of Miss Davis' vehicle slowing down or stopping, as she testified she did, it would only have been reasonable for him to conclude that she did not intend to enter the intersection immediately in front of approaching traffic.
Where a motorist is proceeding on a right-of-way street protected by stop signs and has knowledge of and the location of such signs, he has the right to assume that any driver approaching the intersection from the less-favored street will observe the law and bring his vehicle to a stop before entering the intersection, and such assumption may be indulged in until he sees, or should see, that the motorist has not observed, or is not going to observe, the law. Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Smith v. Hoye, La.App., 115 So.2d 651; Randall v. Baton Rouge Bus Co., Inc., La. App., 114 So.2d 98; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145; Termini v. Aetna Life Ins. Co., La.App., 19 So.2d 286.
Nor are we able to find manifest error in the jury's verdict and the conclusion obviously reached by the court that plaintiff's host was solely at fault and that her negligence was the sole and proximate cause of the accident. From the evidence, we entertain no doubt that Miss Davis failed, at least, even if she stopped, to *675 make adequate observation before entering into the intersection of a favored street, and that she failed to accord the right of way to approaching traffic on that street as it entered, or was about to enter, the intersection. The authorities are replete with pronouncements that the duty of a motorist to be constantly alert never ceases and that he is charged with seeing that which he should have, and could have, seen by the exercise of due diligence. Her failure to timely observe the approach of the taxi and to accord it the right of way precipitated the accident and was its sole cause.
Defendant Hardware Mutual Casualty Company contends, however, that it clearly appears from plaintiff's testimony she completely exonerated Miss Davis of any fault in the occurrence of the accident and that she is thereby precluded from recovery. Cited, in support of the position taken, is Thompson v. Haubtman, 18 La. App. 119, 137 So. 362. We do not so appreciate and understand the testimony of plaintiff when taken and considered as a whole. The statements relied upon consisted largely not of facts but of opinions and conclusions. Under a similar factual situation we recently had the occasion to consider the identical question presented here and we distinguished that case from the case cited and relied upon. The same distinction presently exists. In Stroud v. Standard Accident Insurance Co., La.App., 90 So.2d 477, 479-480, we stated:
"On the matter of the occurrence of the accident, Miss Stroud's testimony is inconsistent with the physical facts and contrary to the testimony of other witnesses who claim to have witnessed the accident. It is urged that her testimony is crystal clear; that she has completely absolved Mrs. Denler of any neglect, and that, having so testified, she is bound by her testimony, exonerating the driver of the car in which she was a guest from all negligence. In support of this contention defendants rely upon LSA-C.C. art. 2291, which reads as follows:
"`Art. 2291. The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
"`It amounts to full proof against him who has made it.
"`It can not be divided against him.
"`It can not be revoked, unless it be proved to have been made through an error in fact.
"`It can not be revoked on a pretense of an error in law.'
"Appellant also cites Thompson v. Haubtman, 18 La.App. 119, 137 So. 362. There a collision was involved between a Ford and a Cadillac. The plaintiff was a guest passenger in the Ford owned and driven by Miss Ruth Haubtman. Of the three defendants condemned by judgment for the injuries allegedly sustained by plaintiff, only Miss Haubtman appealed. In replying upon the aforesaid article of the Code in reversing the judgment as to that defendant, the court said:
"`A consideration of the conflicting testimony in the record raises considerable doubt in our minds concerning the correctness of the holding of our brother below to the effect that Miss Haubtman was at fault, but we are relieved from the necessity of weighing this testimony, because the description of the accident given by plaintiff herself completely exonerates Miss Haubtman from all responsibility.'
"Upon the facts of that case, we are in accord with the court's holding. Plaintiff clearly and unequivocally, throughout her testimony, wholly and completely exonerated Miss Haubtman from any act of negligence. Her statements were straightforward and unqualified. No attempt was made to withdraw her statements or to qualify her testimony in any manner. In those respects the instant case is distinguishable.

*676 "We do not find that that decision or the aforesaid Codal provision are particularly applicable to the facts of the present case. In the first place, considering Miss Stroud's testimony as a whole, as we are enjoined to do by the article of the Code, the conclusion is inescapable that her statements neither establish liability on the part of Mrs. Denler nor exonerate her from liability. From the conflicting and contradictory character of her testimony and from her demeanor and actions as a witness, as can be easily gleaned from the record, it can not be concluded that her testimony establishes either of these facts. As stated, we are prohibited from taking into consideration only one line of her testimony, that is, that which is most favorable to defendant, and disregard everything else she may have testified. From a consideration of the whole and taking into account all the facts and circumstances surrounding the giving of her testimony, we are, however, of the opinion that as to the issue and question of liability, her testimony should be disregarded entirely, which has been the course pursued in resolving the issues in this case."
For the reasons above quoted, we again conclude that defendants' contention is without merit.
There remains for consideration the question of the quantum of the award. Plaintiff first complains that no allowance was made in the award for the loss of wages during five weeks in the sum of $212.50, damages to clothing, $16; and medical expenses, $526.30. The record does not necessarily support that conclusion. It may well be presumed that the jury took into account and consideration all items established by proof where its findings were couched in general terms and the items allowed were not otherwise indicated. We do think, however, the first two of these items should be allowed in a recomputation of the award.
The principal controversy as pertains to these items concerns the medical expenses. Notwithstanding the payment of this expense by the defendant insurer to plaintiff, or for her account, under the special medical payment provisions of the policy she contends she is entitled to receive, also, an identical amount under the general liability provisions of the policy. Cited in support of this contention are: Warren v. Fidelity Mutual Insurance Company, La.App., 99 So.2d 382; Distefano v. Delta Fire & Casualty Company, La.App., 98 So.2d 310. These authorities have no application to the point under consideration and for which they were cited, as the policy provides that the amount payable under its general liability provisions shall be reduced by payments made under the medical expense features of the contract.
Lastly for consideration is the adequacy of the award for plaintiff's personal injuries. By the force of the impact and/or the maneuver of the car following such impact, plaintiff was thrown from the automobile to the street where she lay unconscious, groaning and mumbling until removed by ambulance to a hospital and placed in an emergency room where she regained consciousness and was administered initial treatments. At her request, plaintiff was permitted to return to her residence the next day, but was readmitted to the hospital two days later. Plaintiff sustained multiple bruises and contusions about the body, sprain of her left wrist and thumb, and a fracture of the interior margin of the glenoid cavity of the left scapula, that is, of the lower edge of the shoulder blade where it joins the humerus of the arm.
Plaintiff was confined to the hospital for a period of 19 days under the treatment of Dr. William M. Hall and Dr. Carson R. Reed, Jr. The former is an expert in cardiology and internal medicine and the latter in orthopedics. Both testified on the trial of the case. No other medical *677 testimony was offered by either plaintiff or defendant.
On Dr. Hall's initial examination he noted plaintiff sustained an injury to the left shoulder, the extent of which was not ascertained at that time; abrasions on the left side of her face and left chest, left hip; and a sprained left rib; and, although not unconscious, she was in a state of nervous upset and shock. On re-examination June 17, 1959, plaintiff complained of continued pain and discomfort in the left side of her neck, with muscle tension, accompanied by headaches and nervousness.
On the morning following the accident Dr. Reed first examined plaintiff. His findings were tenderness over the interior aspect of her left shoulder and pain on motion, swelling and blueness of the calf of her left leg, and a fracture of the left scapula as heretofore stated.
On her readmission to the hospital, the doctor further noted complaints of pain in the left wrist and thumb and, by X-rays, found osteo-arthritis of the left wrist and thumb. Also noted was soreness extending across the top of her left shoulder. From subsequent examinations, covering the interval from plaintiff's release from the hospital to the time of trial, soreness in the areas affected were noted, with continual complaints of pain and limitation of motion, particularly in the left shoulder and arm. X-rays revealed an increased cervical lordosis, a narrowing of the intervertebral disc between the fifth and sixth cervical vertebrae with nipping at the anterior margin of the interior surface thereof. The sprain probably sustained by plaintiff to her left wrist and cervical spine was said to have aggravated her osteoarthritis, intensifying and prolonging pain, particularly on motion due to the arthritis and nerve root irritation. For the relief of pain in the cervical region, traction was applied by means of a head halter with a weight attached to stretch the tight posterior neck muscles so as to relieve pressure. A continuation of this treatment was advised, as was physiotherapy.
At the time of trial, 15 months following plaintiff's accidental injuries, the record leaves no room for doubt as to the reality of plaintiff's pain and suffering, intense for many days, continuing, but in a lesser degree, to the time of trial. Nor does the medical evidence leave any doubt as to the probable continuation of pain and discomfort indefinitely and perhaps permanently. Nor is there any question but that plaintiff has most probably sustained a permanent, partial loss of the use of her left arm and shoulder. In that regard, it may be noted that she is not fully able to discharge all the duties of her former occupation as saleslady and clerk in a drug store by reason of her inability to extend her arm and reach above a horizontal plane. Such restriction and limitation of movement of her arm obviously has the effect of restricting her activities.
In fixing the award, we find of little help the authorities cited by either counsel. While an ideal situation would require similar awards for comparable injuries, the ideal is most difficult to attain because of the many divergent factors involved. In reality, each case must be adjudged upon its peculiar facts and circumstances. In reviewing the facts of the instant case, the injuries sustained by plaintiff, the pain and suffering experienced and which will probably be prolonged indefinitely, and her permanent disability, plaintiff is entitled to a substantial award. We do conclude, however, that the award as made is excessive and should be reduced to $7,000, plus loss of wages and damage to clothing.
Accordingly, the judgment appealed is amended by reducing the award to $7,228.50 and, as thus amended, the judgment is affirmed.
Plaintiff-appellant is assessed with the cost of the appeal; all other costs are assessed against the defendant, Hardware Mutual Casualty Company.
Amended and affirmed.