136 So.2d 735 (1961)
Mrs. Mary Effie FRANKLIN
v.
ZURICH INSURANCE COMPANY et al.
No. 5382.
Court of Appeal of Louisiana, First Circuit.
December 27, 1961.
Rehearing Denied February 6, 1962.
Certiorari Denied March 16, 1962.
*736 Watson, Blanche, Wilson, Posner & Thibaut, Kennon, White & Odom, Baton Rouge, for appellant.
Cobb & Brewer, Baton Rouge, for appellee.
Before ELLIS, HERGET and MILLER, JJ.
MILLER, Judge pro tem.
This is a damage suit filed by Mrs. Mary Effie Franklin against Zurich Insurance Company and Central Mutual Insurance Company, arising out of an intersectional collision in the City of Baton Rouge. Plaintiff was a guest passenger in an automobile operated by her husband, Jasper Franklin, who was insured by defendant, Central Mutual Insurance Company. The case was tried by civil jury on November 17 and 18, 1960, and the jury returned a verdict for the plaintiff in the sum of $8,500.00 against both defendant insurer in solido. An application for a new trial was filed by Central Mutual Insurance Company, which motion was denied by the trial court and a suspensive appeal to this court followed. Pending appeal plaintiff settled with defendant, Zurich Insurance Company, insurance carrier of Elijah D. Bossier. This compromise agreement and the order dismissing the appeal contained an express reservation of all rights of plaintiff against defendant, Central Mutual Insurance Company.
The accident occurred on November 21, 1959, in the City of Baton Rouge at the electric semaphore controlled intersection of North Acadian Thruway and Fairfields Avenue. North Acadian Thruway runs north and south, and Fairfields Avenue runs east and west. Plaintiff, Mrs. Mary Effie Franklin, was the only passenger and was seated in the right front seat of a 1957 Ford sedan owned and driven by her husband, Jasper Franklin, and insured by Central Mutual Insurance Company. The Franklin automobile was being driven in a southerly direction on North Acadian Thruway and the 1957 Ford sedan owned and driven by Elijah D. Bossier and insured by Zurich Insurance Company was being driven in a westerly direction on Fairfields Avenue. The collision occurred in the intersection.
The record contains conflicting evidence as to who ran the red light at the intersection, but it is conceded by all parties that the light was not green both ways. The jury, apparently unable to resolve this conflict, gave judgment in solido against both defendants. Although this court believes that the evidence absolves Jasper Franklin from negligence in this matter, we are relieved from the necessity of making this decision because the testimony of plaintiff, Mrs. Mary Effie Franklin, completely exonerates her husband, Jasper Franklin, from all responsibility.
*737 The following unequivocal answers of Mrs. Franklin under direct examination set the pattern of her testimony.
"Q. Mrs. Franklin, you were involved in an accident when your husband was driving his 1957 Ford on North Acadian Throughway west on the 21st of November, 1959, were you not? A. Yes, sir.
"Q. Where were you sitting in the Ford? A. In the right side of the front seat the passenger side of the front seat.
"Q. How fast were you going, about? A. About thirty miles an hour.
"Q. Did you see the light at the intersection of Fairfields? A. Yes, sir.
"Q. When was the last time you saw it? A. I would estimate it was when we were three or four car lengths from the intersection.
"Q. What color was it then? A. Green.
* * * * * *
"Q. Are you sure you had the green light when you went through the intersection? A. Yes.
"Q. Were you talking to your husband at the time? A. I don't think so.
"Q. Did you tell * * * are you a backseat driver? Do you tell him how to drive his car? A. Well, I always notice. I try not to say anything, but I do watch lights, and watch other cars and * * *
"Q. Well, Mary, what I mean, at this particular time did you tell him `Jasper, do this, or don't do this' or anything like that? A. No, I was just watching."
On cross-examination the plaintiff testified as follows:
"Q. Mrs. Franklin, I think you stated that as you were approaching this intersection three or four car lengths from the intersection you noticed that that traffic signal was green. A. Yes.
"Q. Will you please tell the jury if your attention was distracted from looking straight ahead before the accident occurred; or were you looking straight ahead and paying attention to where you all were going? A. I was watching the light. I wasn't watching the other cars on the street. I was looking ahead, but at the light and I continued to look at the light until the impact and it remained green the whole time.
"Q. You never did see it turn to yellow or to red? A. No, sir.
"Q. Before the impact did you hear this mechanical click that some traffic signals make? A. No, sir."
The following testimony by Mrs. Franklin illustrates how she exonerated her husband from any responsibility and put all liability on Bossier:
"Q. Did Mr. Bossier say anything one way or the other about what color the light was? A. Well, I heard him say * * * I don't remember if he was talking to me or to Jasper, but I heard him say, `It was red, but I thought I could make it,' and I commented to Jasper after Mr. Bossier walked away that what did he mean by he thought he could make it?
"Q. Are you certain about that Mrs. Franklin? A. Yes, sir, I remember that."
The plaintiff's concerted effort to absolve her husband of all responsibility and to pin the negligence on Mr. Bossier is obvious from her testimony as follows:
"Q. Was there anybody in any of the other vehicles that drove up and *738 said that they saw the accident? A. No, sir, I started looking around because since it was at a traffic light I was concerned, I knew that the light was green for us, but I was concerned that when the Police got there they wouldn't know and I didn't know at that time what Mr. Bossier would say, so I started looking around to see if I could find a witness."
Mrs. Franklin's testimony was consistent and unequivocal about the fact that her husband had the green light. The instant case is similar to the case of Thompson v. Haubtman, 18 La.App. 119, 137 So. 362 (Orleans App.1931), wherein the court held that the plaintiff was bound by her testimony exonerating Miss Haubtman, the driver, and cited as its authority LSA-Civil Code, Article 2291 setting forth the judicial confession.
The recent cases of Stroud v. Standard Accident Insurance Company, 90 So.2d 477 (2d Cir. La.App.1956), and Bowers v. Hardware Mutual Casualty Company, 119 So.2d 671 (2d Cir. La.App.1960), deal with this problem of the judicial confession but both can be distinguished from the instant case as well as the case of Thompson v. Haubtman, supra.
In Stroud v. Standard Accident Insurance Company, supra, the plaintiff, a Miss Stroud, 17 years of age, was riding in a Ford automobile driven by Sydonia Basco, now Mrs. Eugene Denler. In distinguishing the Stroud case from the Thompson case, the court had this to say:
"On the matter of the occurrence of the accident, Miss Stroud's testimony is inconsistent with the physical facts and contrary to the testimony of other witnesses who claim to have witnessed the accident. It is urged that her testimony is crystal clear; that she has completely absolved Mrs. Denier of any neglect, and that, having so testified, she is bound by her testimony, exonerating the driver of the car in which she was a guest from all negligence. In support of this contention defendants rely upon LSA-C.C. Art. 2291, which reads as follows:
"`Art. 2291. The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
"`It amounts to full proof against him who has made it.
"It cannot be divided against him.
"`It cannot be revoked, unless it be proved to have been made through an error in fact.
"`It can not be revoked on a pretense of an error in law.'
"Appellant also cites Thompson v. Haubtman, 18 La.App. 119, 137 So. 362. There a collision was involved between a Ford and a Cadillac. The plaintiff was a guest passenger in the Ford owned and driven by Miss Ruth Haubtman. Of the three defendants condemned by judgment for the injuries allegedly sustained by plaintiff, only Miss Haubtman appealed. In relying upon the aforesaid article of the Code in reversing the judgment as to that defendant, the court said:
"`A consideration of the conflicting testimony in the record raises considerable doubt in our minds concerning the correctness of the holding of our brother below to the effect that Miss Haubtman was at fault, but we are relieved from the necessity of weighing this testimony, because the description of the accident given by plaintiff herself completely exonerates Miss Haubtman from all responsibility.'
"Upon the facts of that case, we are in accord with the court's holding. Plaintiff clearly and unequivocably, throughout her testimony, wholly and completely exonerated Miss Haubtman from any act of negligence. Her *739 statements were straightforward and unqualified. No attempt was made to withdraw her statements or to qualify her testimony in any manner. In those respects the instant case is distinguishable." [90 So.2d 479.]
Similarly, Bowers v. Hardware Mutual Casualty Company, supra, is distinguishable from the instant case and from Thompson v. Haubtman, supra, in much the same fashion as Stroud v. Standard Accident Insurance Company is distinguishable. In the Bowers case the court had this to say:
"Defendant, Hardware Mutual Casualty Company contends, however, that it clearly appears from plaintiff's testimony she completely exonerated Miss Davis of any fault in the occurrence of the accident and that she is thereby precluded from recovery. Cited, in support of the position taken, is Thompson v. Haubtman, 18 La.App. 119, 137 So. 362. We do not so appreciate and understand the testimony of plaintiff when taken and considered as a whole. The statements relied upon consisted largely not of facts but of opinions and conclusions. Under a similar factual situation we recently had the occasion to consider the identical question presented here and we distinguished that case from the case cited and relied upon. The same distinction presently exists." [119 So.2d 675.]
The court was speaking of and thereafter went on to quote extensively from the decision in Stroud v. Standard Accident Insurance Company, supra, which was used as authority in deciding Bowers v. Hardware Mutual Casualty Company.
There were three eye witnesses to this intersectional collision: The plaintiff, her husband, Jasper Franklin, and the driver of the other car, Elijah D. Bossier. Mr. and Mrs. Franklin were unequivocal in insisting that they had the green light as they proceeded south on North Acadian Thruway. Mr. Bossier likewise testified at the trial that the light was green for him as he drove through the intersection, going west on Fairfields. Obviously someone was mistaken.
To reiterate, this court is constrained to find that Mr. Franklin was free from negligence and the negligence was on the part of Mr. Bossier, as indicated by all of the evidence. We do not find it necessary to rule on this question because Mrs. Franklin completely exonerated her husband from any negligence. Her entire testimony was completely consistent and unequivocal on this point. No part of her entire testimony is even suggestive of any negligence on the part of her husband. Therefore, it is the opinion of this court that her testimony in that respect amounts to a judicial confession under LSA-Civil Code, Article 2291 and the case of Thompson v. Haubtman, supra, precluding her from recovery against her husband's insurer, Central Mutual Insurance Company.
Accordingly, the judgment of the trial court awarding judgment in favor of plaintiff and against defendant, Central Mutual Insurance Company is hereby reversed and rendered. All costs are to be paid by the plaintiff.