On Rehearing
REID, Judge.
A rehearing was granted in this matter for the sole purpose of reviewing the question of the effect of an alleged judicial confession of one of the plaintiffs, Rodia Matchum, on her right to recover. This point was raised before the Trial Court and was also discussed in this Court’s original opinion in this case.
The question of the judicial confession arises out of the testimony of the plaintiff Rodia Matchum wherein she attempted to exonerate her son-in-law, Elliott Turner, from any liability resulting from the operation of his vehicle, despite the fact that in paragraph 10 of her petition she had charg *773 ed Elliott Turner with the following acts of negligence:
“(1) failed to keep his automobile under proper control.
(2) failed to keep a proper lookout and failed to see what he should have seen, or if seeing it, failed to act reasonably thereon,
(3) stopped his automobile on the highway in front of oncoming traffic,
(4) operated his automobile in a reckless and unlawful manner without proper regard for other traffic on the road,
(5) failed to exercise the last clear chance to avoid the accident.”
When Rodia Matchum was called as a witness on the trial of suit No. 94708, however, she testified as follows on direct examination :
"Q: How fast had Elliott been driving?
A: About twenty-five as near as I can guess at it.
Q: Had he been driving twenty-five miles per hour all the way from New Orleans?
A: He was driving a little bit faster. I don’t know exactly how many miles at that time, but he was going a little faster, but he slowed down after the rain ’cause it was coming kind of hard.
Q: What happened just before the accident, you got hit by this truck, what were you doing ?
A: I was sitting in the car with Elliott.
Q: What were you doing just before the accident happened?
A: I wasn’t doing anything, but I stooped down to get a sandwich, but when I looked back just before then, I saw the truck coming fast, and just as I stooped down to get a sandwich, it was at that time I saw the car pass on the left side, coming toward Baton Rouge too, and I stooped down to get a sandwich and then the accident happened.
Q: Did Elliott slow the car down any just before the accident happened?
A: He kept going on the same way he was going.
Q: Did he stop the car?
A: No, sir, he didn’t stop.
Q: What lane of traffic was he driving in?
A: In the right lane.
Q: Did he ever drive in the left lane ?'.
A: No, sir.
Q: Did he ever slow down?
A: No, sir.
Q: Did he ever stop?
A: No, sir.”
She also testified on cross examination as follows:
“Q: Now, Rodia, as I understand your testimony, you and Elliott were riding along in that car in the right lane going toward Baton Rouge, is that right?
A: Yes, sir.
Q: At any time before that car was hit from the rear by the truck, did Elliott lose control of his automobile ?
A: No, sir, he didn’t.
Q: He stayed in the right lane of travel the whole time?
A: Yes, sir.
*774 Q: Was he watching where he was going ?
A: Yes sir.
Q : Did he stop his automobile at anytime?
A: No, sir, he didn’t stop.”
At no time did counsel for-plaintiff seek to have her clarify this testimony, nor did he attempt to have her testify concerning Elliott Turner’s testimony.
An examination of Rodia Matchum’s testimony shows that it was consistent, it did not vary or contradict itself in any form whatsoever, even though it was contrary to the balance of the testimony and the physical facts as found by the Trial Judge and by this Court in its original opinion.
Counsel for plaintiffs has written an extremely able and scholarly brief on the question of judicial confession in an attempt to show that his client made no judicial confession. However, it is not necessary to go into a lengthy discussion here on the points raised by his brief in view of the recent holding of this Court in Reynolds v. Hardware Mutual Casualty Company, et al., 178 So.2d 412 on the Docket of this Court, which decision was handed down on July 1, 1965, rehearing denied September 30, 1965. In that case it was held :
“The defendant Maryland Casualty Company alleges, however, that the testimony of the petitioner amounted to a judicial confession insofar as any negligence of Mr. Dake is concerned. Article 2291 of the Louisiana Civil Code provides as follows:
“•‘The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
“It amounts to full proof against him who has made it.
“It can not be divided against him.
“It can not be revoked, unless it he proved to have been made through an error in fact.
“It can not be revoked on a pretense of an error in law.’ ”
“In Franklin v. Zurich Insurance Company, La.App., 136 So.2d 735, we held that the wife of the driver of the vehicle exonerated her husband from any negligence as her entire testimony was completely consistent and unequivocal with regard to his lack of negligence. We believe that the testimony of the petitioner does exonerate the driver of the vehicle in which he was riding from any negligence as it is the sum and substance of petitioner’s testimony that Mr. Dake stopped abreast of the stop sign before entering Perkins Road and that faced by the sudden emergency of the Pontiac vehicle making a sharp left turn directly in front of him, thus requiring him to pull forward and to the right to avoid being struck by the turning vehicle. Such testimony on the part of petitioner tended to exonerate Mr. Dake of any negligence. Under the clear provisions of the second paragraph of Article 2291 we find that if the testimony of the petitioner is consistent and it does not vary or contradict itself, even though it is contrary to the physical facts or other testimony, it is a judicial confession against that particular petitioner whose testimony exonerates that particular defendant. Although the physical facts and the other testimony would show that Mr. Dake was guilty of negligence which was the proximate cause of the accident, the provisions of the Civil Code Article exonerates Mr. Dake and his insurer from any liability to petitioner.”
For the above and foregoing reasons, it is now ordered that the judgment of the District Court awarding damages to Rodia Matchum be and the same is hereby reversed and judgment rendered in favor of *775 Maryland Casualty Company rejecting the demands of Rodia Matchum and dismissing this suit at her cost.
In all other respects the judgment of the District Court is affirmed.
Affirmed in part and reversed in part.