LOLLEY, J.
LThe defendant, the City of Shreveport, appeals a judgment by the First Judicial District Court, Parish of Caddo, State of Louisiana, in favor of Maudie Mae Brown, the plaintiff. Brown answers the appeal. For the following reasons, the trial court’s judgment is affirmed, as amended.
Facts
On March 7, 2013, Maudie Mae Brown was walking on the sidewalk running along St. Vincent Avenue in.Shreveport, Louisiana. .She was almost 74 years old at the tíme and for over 20 years had been a permanent pre-kindergarten .classroom aide at Atkins Elementary School in Shreveport helping prepare preschoolers for kindergarten. At the time of her ácci-dent, Brown was also employed by Urban Support, working after school assisting children with their homework. At the end of her workday, which began at 7:30 a.m. and ended at approximately 5:00 p.m., Brown would routinely ride with the children on a- school bus to take them home. On the day of this incident, she was in the process of escorting a child home, which necessitated crossing a busy street at approximately 5:00 p.m. According to Brown, she may have walked down that sidewalk once, some years before. In the process of escorting the child, she tripped and fell over a raised portion of the sidewalk, fracturing her shoulder which required medical attention.
She filed suit against the City of Shreveport (the “City”) as owner of the sidewalk. *344 After a trial of the matter, the trial court determined that the City’s sidewalk had a raised misunion, which was defective and presented an unreasonable risk of harm to Brown. The trial court assigned 50% ^comparative fault to each party, concluding that had Brown looked down, she could have seen the defect. The trial court awarded special damages for medical expenses to Brown in the amount of $8,547.00; lost wages in the amount of $3,964.50; and, general damages in the amount of $25,000.00. The City appeals the trial court’s judgment, and Brown answers the appeal.
Discussion

Liability for Public Bodies

Brown’s claim against-the City for damages is rooted in La. C.C. arts. 2317 and 2317.1.; however, the specific statute for public entities' which parallels article 2317.1 is La, R.S. 9:2800, which states, in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
* ⅜ *
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity' for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge.
These provisions establish a duty of* care over the property owned by the defendant or property in his custody. McClelland v. City of Shreveport, 47,570 (La.App.2d Cir.01/16/13), 108 So.3d 810, 814. Under these provisions, the City, as the owner of a public right of use over the sidewalk, has the duty to ensure the public’s use and possession of the sidewalk. | ^However, a municipality is not an insurer of the safety of pedestrians. The City must keep the sidewalks reasonably safe, but the maintaining of them in perfect condition is not necessary. Graham v. City of Shreveport, 44,994 (La.App.2d Cir.01/27/10), 31 So.3d 526, writ denied, 2010-0440 (La.04/30/10), 34 So.3d 294, citing Boyle v. Board of Supr’s of La. State Univ., 1996-1158 (La.01/14/97), 685 So.2d 1080. Moreover, under La. R.S. 9:2800, a City cannot be liable for damages resulting from a defective condition without proof that it had actual or constructive knowledge prior to the occurrence of the particular vice or defect which caused the damage. Campbell v. Louisiana Dept. of Transp. & Dev., 1994-1052 (La.01/17/95), 648 So.2d 898; McClelland, supra.
The trial court’s findings pursuant to La. R.S. 9:2800 are subject to manifest error review. Graves v. Page, 1996-2201 (La.11/07/97), 703 So.2d 566; McClelland, supra at 814. Under this standard, the appellate court will review the entire record to determine whether the trial court’s findings were clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). In order to reverse, the appellate court must find that a reasonable basis does not exist for the finding of the trial court and that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).

*345
Risk of Harm

In its first assignment of' error, the City argues that the trial court erred in finding that the sidewalk created an unreasonable risk of harm. According to the City, a defect is a condition that creates an unreasonable Rrisk of harm to persons on the premises; however, not every minor imperfection or irregularity will give rise to liability. A landowner is not hable for an injury which results from a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner. The City submits that Brown testified and admitted that she was not paying attention to the sidewalk as she walked upon it. Additionally, it maintains that Brown conceded had she been looking at the .ground where she was walking, she would have been able to see the separation in the sidewalk. ,. ,
Courts have adopted a risk-utility balancing test to determine whether a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. Pryor v. Iberia Parish School Bd., 2010-1683 (La.03/15/11), 60 So.3d 594, 596, citing Reed v. Wal-Mart Stores, Inc., 1997-1174 (La.03/4/98), 708 So.2d 362, 365. In Chambers v. Vill. of Moreauville, 2011-898 (La.01/24/12), 85 So.3d 593, 597-98, the Louisiana Supreme Court applied the risk-utility balancing test to determiné whether a defect in a sidewalk created an unreasonable risk of harm, and concluded there is no fixed rule in deciding whether a defect in a sidewalk is unreasonably dangerous.
One consideration that the Chambers court addressed in its risk-utility balancing test was the size of the sidewalk deviation; Relying on jurisprudence, the Chambers court concluded that a 1½ inch deviation does not generally present an unreasonable risk of harm. Id. at 598. Here, | ¿Brown maintains the deviation was at least two inches in size-sizable enough, to catch the toe of her shoe , and cause her fall. Although there is no direct evidence regarding the size of the deviation, the circumstantial evidence presented at trial supports Brown’s allegation.
Ernie Negrete testified at trial; he had been the City’s superintendent of streets and drainage at the .time of Brown’s fall. In that position he was directly responsible for the maintenance and construction of sidewalks, curbs, and handicap ramps. At the trial, he testified that Brown had made á citizen’s complaint of an uneven sidewalk, where she had tripped and fallen. He noted that the City does not repair every sidewalk where a person is alleged to have tripped and fallen. When asked how.big a deviation in a sidewalk would need to be to warrant- repair, Negrete testified, “I .would say probably a couple of inches — ” Negrete further testified that although his standard was not a mandate of the department, he expected that others in the department would share his opinion.
A photograph taken after the fall shows that the deviation ’ was sizable, but there was no precise measurement. However, despite the lack of a precise measurement or record of the sidewalk deviation that caused Brown’s fall, her testimony that the deviation was sufficient to catch the toe of her shoe and Negrete’s testimony -regarding the policies of the City in repairing sidewalk defects are sufficient evidence to support the trial court’s ultimate findings of fact. -
Unreasonable risk of harm is a factual determination to be made on a case-by-case basis. McClelland, supra at 815. Here, the trial court accepted | fithe circumstantial evidence tending to indicate the sidewalk deviation-was at least two inches. *346 We do not find manifest error in the trial court’s finding that this particular defect created an unreasonable risk of harm.

Notice of the Defect

In its’ second assignment of error, the City argues that Brown failed to prove it had notice of the alleged condition prior to her fall. According to the City, Brown had no evidence that any prior complaints had ever been made regarding the subject sidewalk defect. In its ruling the trial court noted the pictures taken by Brown after the accident showed some “residual concrete on the top of where the crack/ height differential is located.” Also observed by the trial court was the installation of a wheelchair ramp in close proximity to the sidewalk location where- Brown had tripped. The trial court concluded that the City had constructive knowledge of the defect in the sidewalk. We agree.
Constructive notice is defined as the existence of facts that imply actual knowledge. La. R.S. 9:2800(D). Here, there was circumstantial evidence that the City had constructive knowledge" of the defect in the sidewalk, because facts implied actual knowledge of the' defect. Negrete testified that in October 2009, a wheelchair ramp was installed on the sidewalk in the immediate vicinity of the spot where Brown fell—approximately eight to nine feet away. Notably, according to City records, a work crew consisting of eight workers started the job on October 21 and finished on October 28, 2009. Negrete testified that this work crew routinely would have inspected the area around the sidewalk where Brown stripped . and should have noticed the uneven sidewalk. Thus, the City would have had, actual notice of the sidewalk deviation due to its own work in proximity of the defect.
Additionally, to prove constructive notice, plaintiffs must produce facts demonstrating that the defect existed for a sufficient period of time that it should have been discovered and repaired if the public entity had exercised reasonable diligence. Benson v. State, 48,300 (La.App.2d Cir.10/09/13), 124 So.3d 544, 546. There also existed .circumstantial evidence that the deviation in the sidewalk existed for a certain length of time sufficient to give the City constructive knowledge. In one of the photos entered into evidence, a live oak tree is near the sidewalk. Negrete agreed that trees are the “enemy of sidewalks,” and that root migration sufficient to cause a sidewalk defect would have occurred slowly over time-years in development. Thus, this defect most probably existed for a sufficient time to put the City on notice.
Although it may be a close question as to whether the City had constructive notice of the sidewalk deviation, we conclude that the trial court’s finding of fact on this issue was reasonable. Here, facts existed to imply the City had actual knowledge. Moreover, the circumstantial evidence before the trial court indicated that the City had a sufficient period of time to discover the deviation in the sidewalk. Considering the facts, the trial court was not manifestly erroneous in concluding the City had constructive notice of the sidewalk defect that caused Brown’s fall.
| ^Apportionment of Fault
Both the City and Brown argue that the trial court erred in its assessment of comparative fault: the City, in its appeal, urges that Brown was 100% at fault, and Brown, in an answer to the appeal, argues that she was less than 50% at fault.
Under La. C.C. art. 2323, “If a person suffers' injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence *347 attributable to the person suffering the injury, death, or loss.”’ Comparative fault applies to claims against public entities under La. C.C. art. 2317 and R.§. 9:2800; Ricks v. City of Shreveport, 42,675 (La.App.2d Cir.10/24/07), 968 So.2d 863, 869. In assessing comparative fault, the .courts consider (1) whether the- conduct resulted from inadvertence, or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and, (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm, 469 So.2d 967 (La.1985).
The trial court’s allocation, of fault is subject to manifest error review. Clement v. Frey, 1995-1119 (La.01/16/96), 666 So.2d 607; Ricks, supra. The reviewing court must review the entire record before it and determine whether the factfinder’s finding was clearly wrong or manifestly erroneous. Read v. Willwoods Cmty,, 2014-1475 (La.03/17/15), 165 So.3d 883, 888. After a court of appeal finds a clearly wrong apportionment of[1] fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. Toston v. Pardon, 2003-1747 (La.04/23/04), 874 So.2d 791, citing Clement v. Frey, supra.
In apportioning 50% of the fault to Brown, the trial court reasoned that “had she looked down she could have seen the misunion.” Brown admitted at trial that had she looked down, she would have seen the defect in the sidewalk. However; after a careful review of this particular record and the facts in evidence, we believe the trial court’s equal allocation of fault to be manifest error. Notably, the trial court’s- reasons for judgment do not indicate whether the Watson elements were considered, and the only reason for the apportionment of 50% fault to Brown is the trial court’s assumption she should have been looking down while walking. However, in considering the Watson elements in apportioning fault, the trial court’s allocation of fault to Brown is erroneous, because it is unreasonable to expect a pedestrian walking on a sidewalk to constantly look down for danger. We determine this especially to be so when considering the particular facts surrounding Brown’s actions.
As Brown testified, her attention was particularly focused “on getting [the child] safely across the street.” It is reasonable to conclude that Brown was unaware of the danger — she had only been on this stretch of sidewalk, once, years before. Brown, or any pedestrian, would assume a sidewalk to be reasonably safe for walking. In fact, that is the purpose of a Imsidewalk — pedestrian traffic. Futher-more, walking on a sidewalk is not a great risk, and Brown was using the sidewalk as it was intended to be used., Had Brown not been simply walking down the sidewalk, maybe running, bike-riding, or skateboarding, a higher level, of awareness might have been expected. For instance, had Brown tripped on a step, curb, or gutter, it would be reasonable to háve expected her to look down while navigating those obstacles. None of those scenario's exist here — Brown was simply walking on the sidewalk, as it was intended.to be used. Moreover, consideration should have been made for Brown’s immediate activity — és-corting a child to an approaching intersection. If Brown was expected constantly to look down for potential dangers, then she would put herself and the child in greater risk of a collision ahead of her in the intersection. Brown’s primary interest *348 was in safely escorting the- child. That activity necessitated her looking forward and straight ahead, not down at a sidewalk that she reasonably assumed fit for its purpose.
Here, a reasonable interpretation of the facts supports a finding that the City bore a majority of the fault both as to the nature of the conduct, as well as the relationship to the damage. It is unreasonable to expect that Brown, a pedestrian walking on a sidewalk in the scope of her employment working with children, must constantly look down for danger. Notably, Brown did admit that had she looked down, she would have seen the deviation in the. sidewalk. Nonetheless, considering Brown’s activity when' she fell, the trial court was in error in apportioning 50% of the fault to Brown. Had the deviation in the sidewalk not existed, Brown would not Inhave fallen at all. We conclude that the City bears more fault for this incident, and the trial court’s finding otherwise was manifestly erroneous. While we find that the allocation of most fault in this case must be placed on the City for this accident, the Toston ruling requires us to raise the fault of the City to the lowest amount that can be attributable to its actions. Accordingly, we allocate 75% of the fault to the City and 25% to-Brown.

General Damage Award

In its answer to the City’s appeal, Brown urges the trial court erred in making a $25,000.00 general damage award to a 73-year-old woman, who fell and broke her shoulder in multiple places, which caused residual pain and disability even after healing. Brown argues that in this case, the trial court’s general damage award was so low as to constitute an abuse of the court’s great discretion. We agree.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve “mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.” Kaiser v. Hardin, 2006-2092 (La.04/11/07), 953 So.2d 802; Nelson v. Southeast Food Inc., 39,157 (La.App.2d Cir.01/28/05), 892 So.2d 790. In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion is left to the judge or jury. La. C.C. art. 2324.1; Kaiser v. Hardin, supra. The role of the appellate court in reviewing awards of general damages is not to decide what it considers an appropriate award, but rather to review the exercise of | ^discretion of the trier of fact. Id.; Youn v. Maritime Overseas Corp., 1992-3017 (La.09/03/93), 623 So.2d 1257, cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry is whether the trier of fact abused its vast discretion in assessing the amount of’damages. Kaiser v. Hardin, supra; Reck v. Stevens, 373 So.2d 498 (La.1979). Only after finding that the trier did in fact abuse its great discretion may the appellate court resort to prior awards, and then only to determine the highest or lowest point reasonably within that discretion. Kaiser v. Hardin, supra; Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
Brown makes a compelling argument why courts should use a more holistic approach to determine an award of general damages; however, this court is constrained to review the record and make a determination whether the trier of fact abused its vast discretion in assessing damages. If we determine that the trial court abused its discretion, we are compelled to consider prior awards, and determine the highest or lowest point reasonably within that discretion, despite Brown’s persuasive argument otherwise.
*349 Brown correctly notes that there is not much guidance regarding a plaintiff similarly situated to Brown. However, in Thomas v. Great Am. Indem. Co., 83 So.2d 485 (La.App. 2nd Cir.1955), this court awarded $7,000.00 in general damages (plus medicals) to a 76-year-old man, whose primary injury. was a fractured shoulder.[1] That plaintiff had no surgery, but was hospitalized for 22 days, confined to home for 31 days after that, 11ssuffered considerable residual pain, and was still undergoing treatment at trial.
In Bowers v. Hardware Mut. Cas. Co., 119 So.2d 671, 676 (La.App. 2nd Cir.1960), the plaintiff sustained multiple bruises and contusions about the body, the most serious of which was a fracture of her left shoulder blade. Noting, ‘While an ideal situation would require similar awards for comparable injuries, the ideal is most difficult to attain because of the many divergent factors involved. In reality, each case must be adjudged upon its peculiar facts and circumstances.” Id. at 677. As a result of her injury, this plaintiff continued to have residual pain until the time of trial, was unable to continue in her normal course of employment, and experienced restriction of activities. Ultimately, it was determined that the trial court’s award of general damages was too high, and this court reduced the plaintiffs general damages to $7,000.00, plus medicals.[2] Id.
In Triche v. Williams, 264 So.2d 659, 660 (La.App. 1st Cir.1972), a 36-year-old man received $12,040.00 in general damages for his injury of “most serious conse-quenee,” a fractured left shoulder. The plaintiff was hospitalized for two weeks and spent five months convalescing.[3]
Brown testified that after she fell, she was in a great deal of pain, but she attempted to drive herself home. Finding that she physically could not, she called a friend, and then she called 911. She was transported to the Inhospital. Initially, Brown was told she needed surgery for her fractured shoulder, something, because of her age, she was unwilling to do. She was sent to see an orthopedist in connection with her workers’ compensation claim, who advised that with physical therapy her arm should heal. Because of the injury, Brown was unable to work, either of her two jobs, for the rest of the school year. At the time of trial, Brown still needed assistance in order to perform the usual household duties and personal' hygiene routines, and she continued to experience pain.-
Although the various plaintiffs noted herein suffered primarily fractured shoulders, they also had some ancillary injuries and spent considerably more time hospitalized than Brown. So considering, an award of $50,000.00 is more in line with the general damage that Brown should have been awarded. The trial court’s award of $25,000.00 was an abuse of discretion, considering this plaintiff, her injury, and other similarly situated plaintiffs, and the judgment is amended to award Brown general damages in the amount of $50,000.00.
*350 Conclusion
For the foregoing reasons, the trial court’s judgment is affirméd as amended. The appellate.court costs in the amount of $1,255.00 is to be paid by the City of Shreveport . in accord with La. R.S. 13:5112.
AFFIRMED, AS AMENDED.
MOORE, J., concurs and assigns reasons.

. Using a Consumer Price Index inflation calculator provided by the United States Department of Labor, Bureau of Labor Statistics, an award of $7,000.00 in 1955 equates to $61,907.43 in 2015. See http://www.bls.gov/ data/inflation_calculator.htm.

. Using a Consumer Price Index inflation calculator provided by the United States Department of Labor, Bureau of Labor Statistics, an award of $7,000.00 in 1960 equates to $56,051.32 in 2015. See http://www.bls.gov/ data/inflation_calculator.htm

.Using a Consumer Price Index inflation calculator provided by the United States Department of Labor, Bureau of Labor Statistics, an award of $12,040.00 in 1972 equates to $68,269.97 in 2015. See http://www.bls.gov/ data/inflation_calculator.htm