REID, Judge.
This is a suit for damages brought by Rodia Matchum and her husband Sidney Matchum against Prassel Lumber Company and its liability insurer Allstate Insurance Company, and Maryland Casualty Company, the liability insurer of Elliott Turner. Rodia Matchum was riding as a guest passenger in the car of her son-in-law, Elliott Turner. The accident occurred on June 18, 1962 on U. S. Highway 61, in East Baton Rouge Parish.
Plaintiff alleges Turner was negligent in failing to keep his automobile under perfect control; failing to keep the proper lookout and failing to see what he should have seen; or, seeing it failed to act reasonably thereon; stopping his vehicle on the highway in front of oncoming traffic; operating his vehicle in a reckless and unlawful manner without proper regard for other traffic on the road; and, failing to exercise the last clear chance to avoid the accident.
Plaintiff also charges Huey P. Scott, driver of the Prassel Lumber Company truck, with concurrent negligence in that he failed to keep his truck under proper control; failed to keep the proper lookout and failed to see what he should have seen, or, if seeing it failed to act reasonably thereon; drove his truck at an excessive rate of speed under the circumstances; drove his truck into the rear of the automobile in which the petitioner, Rodia Matchum was riding as a guest passenger; drove his truck in a reckless and unlawful manner, without proper regard for other traffic on the highway; failed to exercise the last clear chance to avoid the accident.
Sidney Matchum seeks judgment for the sum of $516.49 special damages, and Rodia Matchum seeks damages in the sum of $30,000.00 for pain and suffering.
*769 The Maryland Casualty Company filed an answer denying the acts of negligence, admitting the insurance policy on the Turner car, and pleading contributory negligence. It further plead, in the alternative, that other physical infirmities of the plaintiff Rodia Matchum should reduce her injuries to the minimum.
Allstate Insurance Company and Pras-sel Lumber Company filed an answer admitting the accident, denying any acts of negligence and pleading contributory negligence on the part of Rodia Matchum in failing to see and observe the danger of an accident, and failing to warn or protest to Elliott Turner of the danger of an accident after she saw what she should have seen, that an accident might occur.
The Lower Court rendered judgment in favor of the plaintiff, Sidney Matchum, in the amount of $516.49 and in favor of Rodia Matchum in the amount of $3250.00 for her cervical strain and $1250.00 for her back injury, for a total judgment for $4500.00 against the Maryland Casualty Insurance Company, insurer of the Turner car, and rejected the claim of the plaintiff as against Prassel Lumber Company and Allstate Insurance Company.
From this judgment Maryland Casualty Company has brought this appeal. Plaintiffs also appealed from the judgment on the question of quantum, and on the question of the joint liability of Pras-sel Lumber Company, and Allstate Insurance Company.
The facts disclose that on June 18, 1962 Rodia Matchum was riding as a guest passenger in an automobile driven by Elliott Turner in a northerly direction on U. S. Highway 61, coming from New Orleans to Baton Rouge. This Highway consists of four lanes, two lanes on each side, separated by a neutral ground. When the car arrived at a “pass through” on the Highway where there is a warning light which marks the turning place he proceeded in a' westerly direction toward the L.S.U. stadium. The pavement was wet as it had been raining. The Turner car was followed around 100 to 150 yards by a Ford car owned and operated by Mr. Stephen Flowers of Port Arthur, Texas. Mr. Flowers was accompanied by his wife, and was pulling a trailer on which there was a speed boat, and he was returning from the Pan-American Boat Races in New Orleans. About 150 yards behind Mr. Flowers’ car was the Prassel truck and tractor driven by Huey P. Scott. These three vehicles were all on the right hand lane of traffic, which is the East lane of the North bound lane of traffic. Mr. Flowers testified that as they approached the “pass through” for some reason the Turner car turned left, supposedly to enter the left hand lane and had come to a stop at a 45 degree angle astride the middle line of the south bound, or west traffic lane of Highway 61. Mr. Flowers slowed his car and on seeing this maneuver turned to his right and passed the Turner vehicle on the extreme right. His car and trailer was half on the Highway and half on the shoulder as he went by. He then pulled into the right lane and remarked to his wife, “Look, there is going to be an accident,” as he had seen the truck and trailer following him. Mrs. Flowers turned and looked and Mr. Flowers from his rear view mirror also saw the truck as it approached the Turner car when the driver slammed on his brakes and turned to the right in an attempt to follow Mr. Flowers’ example and pass the Turner vehicle on the right. His trailer was partly on the Highway and partly on the shoulder on the right, but his trailer jackknifed and skidded into the Turner car, striking it in the rear and as a result of which Rodia Matchum, who had reached down to pick up a sandwich was thrown back over the front seat on to the floor in the back, and received the injuries of which she complains.
Rodia Matchum and Elliott Turner testify that they were driving on the right hand lane at all times, that a Ford car passed them on the left and that they were struck *770 in the rear by the Prassel Lumber Company truck.
The Maryland Casualty Company lists three errors, first the Trial Court erred in finding facts regardless of the admissions of the plaintiffs, secondly, alternatively the Trial Court erred in finding Huey Scott was not negligent, and thirdly, alternatively the Trial Court erred in assessing damages.
The first proposition we will take up is the appellant Maryland Casualty’s argument that Rodia Matchum by her testimony which it claimed was clear and un-equivocable that Elliott Turner was in the right hand lane, and she maintained even under cross examination that he did not stop his vehicle, further that there was no attempt made by her to qualify or revoke this testimony. They rely on the provisions of Article 2291 of the LSA-C.C. which reads as follows:
“The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
“It amounts to full proof against him who has made it.
“It can not be divided against him.
“It can not be revoked, unless it be proved to have been made through an error in fact.
“It can not be revoked on a pretense of an error in law.”
They cited the case of Thompson v. Haubtman, 18 La.App. 119, 137 So. 362, and Franklin v. Zurich Insurance Company, La.App., 136 So.2d 735. These cases hold that the plaintiff had made a judicial confession which was binding on her and the insurer and as her testimony had the effect of completely exonerating the driver from negligence she could not recover from his insurer. However, the Maryland Casualty did not object to the testimony of Mr. Flowers on the grounds that Rodia Matchum had made this alleged judicial confession insofar as negligence on the part of Elliott Turner was concerned.
The Trial Judge in his written reasons stated that Rodia Matchum was obviously trying to help her son-in-law Turner, who had also filed suit against Prassel Lumber Company and its insurer, which case was consolidated for trial with the instant case. (Judgment was rendered in that case, rejecting Turner’s demands and no appeal was taken from the judgment.)
“Where the testimony of a guest passenger completely and unequivocally exonerates the host driver from negligence, such testimony operates as a judicial confession under LSA-C.C. Art. 2291 which precludes recovery by the guest passenger against the host driver and his insurer. Thompson v. Haubtman et al., [18 La. App. 119] 137 So. 362; Franklin v. Zurich Insurance Company, 136 So.2d 735.
“Where such testimony is equivocal, consists largely of opinions and conclusions rather than facts, or is conflicting and self-contradictory in character, it does not constitute a judicial confession barring the guest passenger’s action against the host driver. Stroud v. Standard Accident Insurance Co. [La.App.] 90 So.2d 477; Bowers v. Hardware Mutual Casualty Company [La.App.] 119 So. 2d 671.”
In the Stroud v. Standard Accident Insurance Company, supra, the Court held as follows:
“On the matter of the occurrence of the accident, Miss Stroud’s testimony is inconsistent with the physical facts and contrary to the testimony of other witnesses who claim to have witnessed the accident.”
The contention there is made that she completely absolved the driver -from fault, *771 but the Court found that the Thompson v. Haubtman, supra, was not applicable considering the facts of the present case. Viewing her testimony as a whole it found that her statements neither established liability on the part of Mrs. Denier, nor exonerated her from liability. In the instant case the testimony of Rodia Matchum is inconsistent with the physical facts and contrary to the testimony of the other witnesses, especially Mr. Flowers on whom the Lower Court relied largely for its finding of liability. While Rodia Matchum did testify that the Turner car did not stop and that a Ford, which she did not know if it was the Flowers Ford or another Ford went past on the left hand side, her testimony further was that she had leaned over to pick up a sandwich, did not see the accident and was not in a position to give very much testimony. If her testimony was the only evidence then there would be no doubt, but the other evidence together with the physical facts preponderately show negligence.
The Judge of the Lower Court dictated in to the record as follows:
“Distance is one of the most important criteria in determining whether one would have the last clear chance to avoid an accident. During my short career as a Judge, I have learned that witnesses are for the most part inaccurate in their estimates of distance. Of course, for lack of a more accurate way, we have to take what witnesses do say about distances, but for the most part I have found them to be inaccurate. However, in my opinion, one of the witness’s estimate of distance carried some weight. In this case I had a man who had been following Elliott Turner and who I would have to believe to be a well coordinated person. The evidence shows that he just finished winning the Pan-American Boat Races. People who do those type of things and can do them successfully have fast reaction time, and he told me that he hardly had time to make up his mind just what he was going to do as a result of Elliott Turner slowing down and angling sideways in the highway. You will recall that he first stated that he first noticed Elliott Turner angling toward the highway, and that fact in itself registered no particular concern to him, that he thought it would not be unusual to go from one lane to the other, but then it dawned on him when he was at a very close distance to him that he was stopped, and he had to make up his mind in a hurry about what to do, so he took off to the right on a wet shoulder and avoided hitting him. We all know how dangerous it is to ride on the highways here in the City of Baton Rouge right after a rain. The Police Department generally has every car in the department out checking on rear-end collisions when we have a big rain in this town, and out there on the highway where the speed limits are sixty-five, I cannot imagine a more dangerous thing to occur, especially when it is raining at the time, and the road wet. Also, I was impressed with his telling his wife to watch that truck hit that automobile.
“Now, I think the truck driver noticed the car, too. I think the truck driver was following Mr. Flowers, and when he noticed Flowers pulling off the road, then he claims that he became aware then that the car was stopped and he did the same thing that Flowers tried to do. He tried to get out of the way. And except for the fact that he was driving a truck-tractor instead of a car with a boat trailer on the back of it, he might also have missed Elliott Turner.
With this finding of fact we are in accord and coupled with the physical facts established by the evidence convinces us that Turner’s vehicle was the proximate cause of the accident.
This brings us to the question of liability of the Prassel Lumber Company *772 truck and it insurer. The Judge of the Lower Court rejected the claim insofar as this truck was concerned on the grounds he believed Scott was doing everything he could after having been presented with an emergency by someone being stopped in the middle of the Highway on a rainy day and on wet pavement. We do not find any error in this finding by the Lower Court because Scott, the driver of the truck had no reason to anticipate that the Turner car would stop on the Highway and block traffic. He did not know the maneuver of the Turner vehicle until the Flowers’ car and trailer pulled to the right to go around it. He pulled to the right and applied his brakes and the chances are that if the trailer had not jackknifed he would have passed the Turner vehicle. Therefore, the driver of the truck was not guilty of any negligence.
This brings us to the question of quantum. The Trial Judge in his reasons found as follows:
“With regard to her damages, I was impressed with the testimony of Dr. Brown as well as the letter of Dr. White. I think Dr. Soboloff put an end to her complaints insofar as an objective examination by him was concerned eleven months after the accident, but I believe that she was fairly seriously hurt in the accident. I listen to whiplash accidents in here week after week, and few of them have as severe a strain in the muscle that it develops a knot in the muscle to the extent that it looks like a hematoma. I believe she had a severe neck strain as a result of the accident and this was also coupled with a back injury. Dr. Brown told the Court that he thought she was honest with him in her complaints. This fellow White that she went to see in New Orleans gave her I think four and a half months disability characterized as the type of disability which would prevent her from doing very much because of the pain in her back and neck. He termed it as total disability for four and a half months, and my idea from listening to her testimony and the medical evidence is that she probably suffered fairly regularly to the extent that she could not resume the same activities that she had been doing before, such as working around the house.”
He further found that Dr. Soboloff testified that she should be well in eleven months though she still complained. He further found that a 60 year old woman, or somebody like that, don’t come back as fast, and where there are no objective symptoms evident he felt sure that she must hurt some. He then awarded her $3250.00 for cervical strain and $1250.00 for back injury, plus the specials to Sidney Matchum. We see no reason to disapprove these awards, although we think that it should be for a lump sum of $4500.00 for her pain suffered and mental anxiety. The awards to the doctors for medical fees are not an issue herein.
For the foregoing reasons it is ordered that the judgment of the Lower Court be affirmed.
Affirmed.