YARRUT, Judge.
This appeal is from a summary judgment dismissing, as Defendants, the driver, the owner and its insurer, of one of the vehicles involved in a three-vehicle collision.
The accident occurred about 8:30 on a rainy morning at the intersection of Airline Highway and Ferris Place in Jefferson Parish. Mrs. Elizabeth Butler, while driving northward in the left-hand, neutral ground lane on Airline Highway, toward Baton Rouge, stopped behind a truck driven by Steve Calcagno, which was partially in the neutral ground and partially in the left-hand lane of traffic, when her automobile was struck from the rear by a truck (driven by Gerald Boudreaux) and pushed forward into the Calcagno truck.
Mr. and Mrs. Butler sued on behalf of themselves and their three minor children, who were passengers in their car, against Defendants Calcagno; Scramuzzo Seafood Co., the owner of the front truck and its insurer, Employees Liability Assurance Corporation; Boudreaux; Suburban Air Conditioning and Refrigeration Co., owner of the rear truck, and its insurer, Old Colony Insurance Corporation.
The summary judgment dismissed Calcag-no, Scramuzzo Seafood Co., and Employees Liability Assurance Corporation, from which judgment Plaintiffs have appealed, contending both the pleadings and the evidence (depositions by Calcagno, Mrs. Butler and Boudreaux, and an affidavit by a witness, Raymond Ploffman) disclose material issues of fact.
Defendants, on the other hand, contend it is undisputed that the Calcagno truck was stopped long enough for Mrs. Butler to bring her automobile to a gradual stop; that she had stopped at least 20 seconds before being hit by the Boudreaux vehicle; and that, under these facts, no negligence on the part of Calcagno could have been the proximate cause of the accident.
We must then consider the depositions and affidavit to determine if there is any factual dispute concerning: (1) How long the Calcagno truck was stopped in the roadway before the Butler vehicle was forced to stop behind it; and (2) how long Mrs. Butler was stopped before being struck by the Boudreaux truck.
Calcagno testified that, upon leaving a service station on the right side of the highway, he proceeded across the highway at about two or three miles an hour, signaling his intention to turn left; that, when he reached the neutral ground intersection of *465 the highway and Ferris Place, he came to a gradual stop; that, about one minute later, he observed the Butler vehicle also coming to a gradual stop several feet behind him; and that, approximately one minute passed before he felt the impact to the rear of his truck.
According to the affidavit of Hoffman, owner of the nearby service station, the Calcagno truck left the service station and crossed the highway slowly until it reached the neutral ground, whereupon it came to a gradual stop; that, after the truck had been stopped about 10 seconds, the Butler vehicle came to a slow and complete stop behind the Calcagno truck; and that, after the Butler vehicle had been stopped about 30 seconds, it was struck in the rear by the Boudreaux truck which skidded about 75 feet on the wet, slippery surface of the roadway.
Defendants rely on Mrs. Butler’s testimony to the effect that she came to a more or less gradual stop several feet behind the Calcagno truck; that she had time to relax and “check her children” before being struck by the Boudreaux vehicle. When asked whether she was stopped for 15 to 20 seconds, she answered she was stopped at least that long. However, she also testified she was traveling between 20 and 30 miles an hour when she first saw the truck leave the service station to cross the highway;that the driver was going faster than he should have been; that he surprised her by stopping; and that he did not signal at all. In fact, she testified her first remark to Calcagno was, “I had no idea you were going to stop.” With regard to the truck stopping, she testified as follows:
“Q. I see. Did he make somewhat of an abrupt stop ?
“A. I presume so.
“Q. Well, if you didn’t know he was going to stop, that was because he didn’t give the signal, is that correct?
“A. Well, he surprised me by stopping.
“Q. And how far was he from the point where he came to rest when you first realized that he was stopped?
“A. Oh, I don’t know.
“Q. About how far was your automobile from his truck when you applied your brakes?
“A. I don’t remember.
“Q. Could you approximate it for me, please ?
“A. Oh, half a block.
“MR. GISEVIUS:
If you don’t know, you may say so. Don’t guess.
“THE WITNESS:
Well, I’m approximating. He said—
“BY MR. RYAN:
“Q. Well, now, you say you were approximately half a block away when he pulled out of the gas station, so I would assume you covered some distance and he covered some distance coming across.
“A. Should have.
“Q. And so then I think it would be safe to say that you were a little closer than half a block to him when he did come to a stop ?
“A. I really don’t know.”
It is noteworthy that to both questions, how far away the Calcagno truck was when she first saw it leave the service station, and how far it was from her when she first saw it stopped in the roadway, she gave the same answer, “Half a block.”
With regard to what Mrs. Butler meant when she said she had time to check her children, her testimony is confusing:
“Q. No, I am talking now before the accident. You say you checked your children?
“A. Before the accident?
*466 “Q. Yes.
“A. I didn’t say that.
$ * * * * *
"Q. Alright, before the collision you relaxed when you came to a stop?:
“A. Yes.
“Q. What do you mean by that?
“A. Well, I relaxed and checked my children.
“Q. And exactly how did you check your children; what did you do? Did you look over to them?
“A. Yes, I had to pick them up off of the floor. They had been knocked down.
* * * # * *
“Q. No, we are talking before the collision. You checked your children didn’t you say?
“A. Yes.
“Q. You looked over and saw they were seated in their seats, is that correct?
“A. I saw they were alright.”
Defendants stress the fact Mrs. Butler had time to check her children, but at one point in her testimony she denied saying this and her other testimony could be interpreted to mean that she simply glanced over to her children as she was stopping and that, in reality, she checked them later after they were knocked on the floor and after the collision occurred.
We find that Mrs. Butler’s testimony is not conclusive that she was stopped 15 to 20 seconds. This estimate was given in response to a leading question and, under all the circumstances, cannot be taken as accurate. Moreover, if her estimate of her speed (20 to 30 miles an hour) and of the distance (one-half block) at which she first saw the Calcagno truck begin to leave the service station, are correct, it is doubtful that the Calcagno truck could have been stopped for any length of time, and that she would have been able to bring her own vehicle to a gradual normal stop. Therefore Mrs. Butler’s testimony, even if taken alone, would raise a genuine issue of material fact.
Furthermore, Boudreaux clearly contradicts that Mrs. Butler was stopped from 15 seconds to one minute, as he testified that he was only three to three and a half car lengths behind Mrs. Butler when he concluded she was going to stop and that, even though he applied his brakes at the same time, he nevertheless ran into her.
A genuine issue of material fact cannot be resolved by a summary judgment. Smooth v. Ethyl Corp., La.App., 179 So.2d 650 and the cases cited therein. Furthermore, the mover for a summary judgment has the burden of clearly proving the absence of any genuine issue as to material fact, and all reasonable doubts must be resolved against him. Haspel v. Treece, 150 So.2d 120 (cert. denied); Darr v. Kinchen, 176 So.2d 638, cert. denied 248 La. 386, 178 So.2d 664.
In oral argument Defendant contended Mrs. Butler completely absolved Calcagno from negligence and referred to recent jurisprudence that a plaintiff’s testimony, exonerating a defendant is a judicial confession, precluding his recovery from that defendant. The referred-to cases are now pending in the Supreme Court on certiorari, namely, Reynolds v. Hardware Mutual Casualty Co., La.App., 178 So.2d 412, cert. granted 248 La. 530, 180 So.2d 542; Matchum v. Allstate Insurance Co., La.App., 180 So.2d 767, cert. granted 248 La. 800, 182 So.2d 75: The Matchum case is still pending.
In an opinion rendered May 2, 1966, in the Reynolds case (186 So.2d 588, rehearings applied for) the Supreme Court did not decide whether a plaintiff’s testimony, exonerating a defendant, constitutes a judicial confession because such a determination was not necessary, in view of the fact that the testimony in that case did not fully exonerate the defendant. The Court *467 indicated that a plaintiff s testimony must be taken as a whole, and must completely exonerate the defendant. See also Steiner v. Employers Liability Assurance Corp., La. App., 182 So.2d 345. In the instant case Mrs. Butler’s testimony does not, when considered as a whole, exonerate Calcagno, but, on the contrary, does allege acts of negligence on his part.
For the above reasons, the judgment appealed from is annulled and the case remanded for a trial on the merits according to law; costs of this appeal to be paid by Defendants; all other costs to await the final determination.
Judgment annulled and remanded.