| | | |
|---|---|---|
| **OSCAR MENDOZA AND CARRIE MENDOZA** | * | **NO. 2024-CA-0604** |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **ACE PROPERTY AND CASUALTY INSURANCE** | * | **FOURTH CIRCUIT** |
| **COMPANY, THE NEW** | | **STATE OF LOUISIANA** |
| **ORLEANS AVIATION BOARD, AND THE CITY OF NEW ORLEANS** | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-03961, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

George B. Recile
Jeremy N. Gettes
CHEHARDY, SHERMAN, WILLIAMS, RECILE & HAYES, L.L.P.
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

      COUNSEL FOR PLAINTIFFS/APPELLANTS, Oscar Mendoza and Carrie Mendoza

Mindy Brickman
Oscar M. Gwin IV
CHRISTOVICH & KEARNEY, L.L.P.
601 Poydras Street, Suite 2300
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE, ACE Property and Casualty Insurance Company, and The City of New Orleans by and through the New Orleans Aviation Board

**REVERSED IN PART AND REMANDED; AMENDED IN PART AND
AFFIRMED AS AMENDED
MAY 27, 2025**

DNA

PAB

TGC

This civil dispute concerns a fall experienced by the plaintiff, Oscar Mendoza ("Mr. Mendoza"), while performing his job duties for his employer, Sodexo, Inc. ("Sodexo"), at the Louis Armstrong New Orleans International Airport ("Airport"). Appellants are Mr. Mendoza and his wife Carrie Mendoza ("Mrs. Mendoza") (collectively the "Mendozas"). They seek review of the trial court's July 15, 2024 judgment, which granted the Motion for Summary Judgment filed by Appellees, ACE Property and Casualty Insurance Company ("ACE") and The City of New Orleans ("City") by and through the New Orleans Aviation Board ("NOAB"), and dismissed the Mendozas' claims. The judgment also dismissed the claims asserted by Sodexo in intervention. For the following reasons, we reverse the trial court's judgment insofar as it granted the Motion for Summary Judgment and dismissed the Mendozas' claims; and we remand this matter for further proceedings. Further, we amend the trial court's judgment to state that the dismissal of Sodexo's claims was with prejudice. As amended, we affirm that part of the judgment.

<u>**Petition for Damages and Petition of Intervention**</u>

On May 3, 2023, the Mendozas filed a Petition for Damages ("Petition") in Orleans Parish Civil District Court, wherein they listed ACE, the NOAB, and the City as defendants (collectively "Defendants"). Therein, the Mendozas explained that at all times relevant to their Petition, ACE insured the NOAB, the City, and the Airport.

The Mendozas further explained that on November 21, 2022, Mr. Mendoza was working at the Airport for Sodexo when he attempted to push a cart stocked with merchandise and goods up a ramp; tripped and fell on broken and damaged concrete; and landed "violently," thereby injuring his left knee and left leg.[1] The Mendozas asserted "that the unmarked and broken concrete ramp created an unreasonably dangerous condition, causing [Mr. Mendoza] to trip and fall," and that "the area in question had inadequate warnings." The Mendozas also contended Defendants "had ownership, custody, control, and/or guarde [sic] of the area in question and created and/or knew or should have known of the unreasonably dangerous condition in the area," such that they were "liable . . . pursuant to [La. C.C.P. arts.] 2316, 2317, 2317.1, and 2322 for [Mr. Mendoza's] damages."

In the Petition, Mr. Mendoza asserted claims for past and future medical expenses; past and future physical pain and suffering; past and future mental pain and anguish; physical disability; physical disfigurement and scarring; past and

---

[1] As discussed more fully throughout this Opinion, the record demonstrates the highest part of the ramp was not flush with the landing area leading to the door that Mr. Mendoza was trying to reach. That is, there was a gap or deviation between the top of the ramp and the landing area. Mr. Mendoza was trying to push the cart over this gap when his alleged accident occurred.

future lost wages; loss of earning capacity; and loss of enjoyment of life. Mrs. Mendoza asserted claims for loss of consortium and loss of services.

On February 7, 2024, Sodexo filed a "Petition of Intervention." Therein, Sodexo sought to intervene in the Mendozas' suit on the basis that it employed Mr. Mendoza on the date of his alleged accident; had paid workers' compensation indemnity and medical benefits to him as a result of his accident; and may be liable for additional benefits and expenses in the future.

**Motion for Summary Judgment**

On April 19, 2024, Defendants filed a Motion for Summary Judgment asserting that they were entitled to summary judgment and dismissal of all of the Mendozas' and Sodexo's claims on the basis of "the open and obvious nature of the concrete ramp at the . . . Airport upon which . . . [Mr.] Mendoza allegedly tripped and fell." Defendants argued "the offending concrete ramp and any purported imperfections in its condition were an open and obvious condition admittedly known to Mr. Mendoza, as he routinely traversed the ramp with a pushcart as part of his job duties with Sodexo," noting that he used the ramp more than 100 times in the weeks prior to his alleged accident.[2] Further, Defendants observed Mr. Mendoza's alleged accident occurred "during daylight hours on a day with no rain," such that Mr. Mendoza should have seen the condition of the ramp on the day of his alleged accident. Defendants contended that "[u]nder applicable Louisiana law," they could "have no liability for" such an "open and obvious condition."

---

[2] Describing the ramp and its associated building entrance, Defendants explained they "serve a commercial ingress and egress purpose for vendors and other Airport personnel" and that the ramp "is not a passenger ramp and is not open to the public."

3

***Mr. Mendoza's Deposition***

In support of their contention that Mr. Mendoza knew about the condition of the concrete ramp prior to his alleged accident, Defendants attached Mr. Mendoza's January 26, 2024 deposition as an exhibit to their Motion for Summary Judgment. Defendants specifically pointed to the following colloquy from Mr. Mendoza's deposition in support of their contention:

> Q.   On the date of your accident, was that the first time you saw the sunken concrete or --
>
> A.   No.
>
> Q.   Were you familiar with it?
>
> A.   [I am] familiar with it.
>
> Q.   How long had it been like that?
>
> A.   A while.

Mr. Mendoza further stated during his deposition that the "sunken concrete" had been there for at least more than one month before his accident. Defendants also averred Mr. Mendoza knew about the condition of the ramp because he "routinely lifted . . . carts so that they cleared the gap" between the top of the ramp and the landing step, pointing to the following colloquy:

> [A.] I was bringing the product upstairs and since it was sunk down, I tried to lift . . . the cart over the --
>
> Q.   Over the lip?
>
> A.   Over the lip.
>
> Q.   Is that something you had done before?
>
> A.   Yes.
>
> Q.   Was that necessary to get it over the lip?
>
> A.   Yes.

4

Q. Had you done it a bunch of times, but not have -- but it worked?

A. Yes.

When asked whether there was another route to take in transporting the merchandise and goods on the cart, Mr. Mendoza replied, "Not really. [There is] a loading dock on the other side, but [it is] a big ramp."

***Michelle Wilcut's Deposition***

Defendants also included as an exhibit the 1442 deposition of NOAB through its corporate representative Michelle Wilcut ("Ms. Wilcut"). Attached as an exhibit to Ms. Wilcut's deposition was a photograph of the subject ramp, about which Defendants admitted "the top of the subject concrete ramp was not flush with the landing leading to the entrance to the Airport; the landing was slightly higher than the top of the ramp." In pertinent part, during her deposition, Ms. Wilcut explained that the ultimate repair to the subject ramp (which repair occurred after Mr. Mendoza's accident) was part of a larger project of concrete repairs in Concourse C (where the ramp is located), a project which was the result of a months-long public bid process. Ms. Wilcut explained the NOAB was aware of the concrete issues in Concourse C by May 20, 2022 (prior to Mr. Mendoza's alleged accident), on which date the NOAB issued an invitation to bid. According to Ms. Wilcut's deposition, just over six months later, on November 25, 2022 (after Mr. Mendoza's alleged accident), the City issued a purchase order for the work, after which the work could commence.

The following colloquy occurred regarding the timeframe of the public bid process:

Q. The time frame from the concrete repair project going out to bid on May 20[], 2022, to the purchase order being issued on

5

November 25[], 2022, that six-month time frame, in your experience, is that typical, is it short, is it long?

A.    It is typical for a contract to be a six-month process.

Q.    Again, is there anything you could have done or anyone at the [NOAB] could have done to expedite that process?

A.    No.

After Ms. Wilcut testified regarding specific steps taken during the public bid process, counsel for the Mendozas asked Ms. Wilcut whether "the Aviation Board [could] have shortcutted this . . . in any way and . . . hired someone or internally done the concrete repair to this ramp outside of the public bid process," and she responded, "No." According to Ms. Wilcut's deposition, the NOAB added yellow warning paint to highlight the defect in the ramp two days after Mr. Mendoza's accident. Ms. Wilcut clarified this work did not require the public bidding process because airport employees were able to perform the work themselves. Ms. Wilcut estimated the cost of repairing the subject ramp was likely $1,248.06.

An exhibit attached to Ms. Wilcut's deposition was titled "Personnel Admitted at Doors Report." According to that report, Mr. Mendoza used the subject ramp and associated entrance 102 times between October 27, 2022, and November 21, 2022, the date of his alleged accident. Defendants pointed to this as further evidence that Mr. Mendoza knew about the condition of the ramp.

### Mrs. Mendoza's and Sodexo's Claims

Finally, Defendants contended summary judgment was also appropriate in their favor regarding Mrs. Mendoza's claims, which were derivative of Mr. Mendoza's meritless claims. Similarly, Defendants asserted summary judgment was appropriate in their favor regarding Sodexo's intervention because Sodexo's

right to recover was dependent on Mr. Mendoza's underlying claim having merit, which Defendants urged it did not.

## Opposition to Motion for Summary Judgment

On May 29, 2024, the Mendozas filed an Opposition to Defendants' Motion for Summary Judgment. The Mendozas attached to their Opposition Mr. Mendoza's May 28, 2024 affidavit, attached to which were a photograph of the loading ramp and a video of Mr. Mendoza's alleged accident. In his affidavit, Mr. Mendoza attested that the attached photograph depicted the area where he fell on November 21, 2022, and he further attested that the attached video depicted his fall. The photograph does not show any warnings, such as yellow paint, signs, cones, or barrels, to indicate the need for caution in the area of the ramp. Of note, the video is grainy but depicts orange caution barrels in the background; however, they are not in front of or adjacent to the ramp where Mr. Mendoza fell.

The Mendozas also attached Defendants' response to an interrogatory as an exhibit. The interrogatory asked Defendants to "[s]tate the date and time when you were first made aware or notified of the fact that the area in which [Mr. Mendoza]'s injuries occurred presented a hazardous condition to invitees, employees, and patrons on the premises." Defendants responded they "were notified on October 22, 2022, of the uneven surface area at 6:29 p.m."

The Mendozas also attached Mr. Mendoza's deposition, wherein he testified that as a result of the subject accident he tore his quadriceps in his left leg and underwent a surgical repair on January 18, 2023. Mr. Mendoza further explained that he began physical therapy for this injury in February 2023, with twice-weekly appointments, and was still going to appointments twice a week at the time of his January 26, 2024 deposition. Additionally, Mr. Mendoza explained that since the

7

accident, he walks with a limp, which is more pronounced when he walks a longer distance. Mr. Mendoza also listed walking aids he used in connection with his injury, including a cane, a walker, a brace, and crutches, but explained that he was no longer using these by the time of his deposition. In terms of additional restrictions on his activity, Mr. Mendoza stated his physical therapist instructed him not to pick up anything off of the floor regardless of size; explained that he cannot carry anything too heavy while walking; and testified he can no longer perform certain household chores, including cutting the grass and changing bed sheets, and has difficulty performing other household chores like sweeping and bathing his dog. Mr. Mendoza also testified the injury prevented him from participating in certain activities and vacations with his family.

### **Hearing and July 15, 2024 Judgment**

On June 13, 2024, the trial court held a hearing on Defendants' Motion for Summary Judgment and, at the conclusion of the hearing, orally granted Defendants' Motion for Summary Judgment. In so doing, the trial court stated:

> A person who has gone over this for 102 times would seem to be familiar with it. I know there is a lip here. I know there is a bump here. I need to take more care. It is open and obvious.
>
> I do not know how [much more] open or how obvious you can get . . . . And I just find that the nature of the ramp in question was open and obvious to anyone who would encounter it . . . .

Then, on July 15, 2024, the trial court issued its written judgment, which states, in pertinent part:

> WHEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that the Motion for Summary Judgment brought on behalf of Defendants, The City of New Orleans by and through the New Orleans Aviation Board and ACE Property and Casualty Insurance Company is granted dismissing all claims of Plaintiffs Oscar Mendoza and Carrie Mendoza and Intervenor Sodexo, Inc.

The trial court also issued written reasons for judgment that same day:

> Plaintiffs point to a Louisiana Supreme Court case, *Farrell v. Circle K Stores, Inc.*, [2022-00849 (La. 3/17/23),] 359 So.3d 467, for the proposition that a plaintiff's knowledge of an allegedly hazardous condition is appropriately considered in assessing fault, but is not appropriate for summary judgment. Plaintiff argued that the [*Farrell*] court stated "whether the plaintiff has knowledge of the condition is irrelevant in determining whether the thing is defective."
>
> Plaintiffs argued that the Defendants' emphasis on plaintiff's subjective knowledge of the condition of the ramp is not to be considered on a motion for summary judgment. Defendants argued that the ramp runs the full length of a set of commercial double doors and the uneven pavement condition runs the length of the ramp. This Court finds that the sunken nature of the ramp in question was open and obvious to anyone who would encounter it, regardless of the number of times it was encountered and that Plaintiffs' claims, as well as those of Intervenor, should therefore be dismissed.

The Mendozas' timely appeal followed.

## ASSIGNMENT OF ERROR

In their sole assignment of error, the Mendozas assert "[t]he [t]rial [c]ourt committed legal error in granting Defendants' Motion for Summary Judgment."

## DISCUSSION

### Summary Judgment Principles and Standard of Review

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* A trial court grants a motion for summary judgment if "[a]fter an opportunity for adequate discovery," the mover's "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). Specifically, the "party seeking summary

9

judgment has the burden of proving there is no genuine issue of material fact." *Anderson v. Briggs*, 2023-0814, 2024-0808, p. 12 (La. App. 4 Cir. 4/25/25), ___ So.3d ___, ___, 2025 WL 1201891, at *6 (quoting *Bankers Ins. Co. v. EMIII Holdings, LLC*, 2024-0386, p. 13 (La. App. 4 Cir. 12/16/24), ___ So.3d ___, ___, 2024 WL 5116650, at *6). This Court has previously defined "[a] genuine issue as . . . a triable issue." *Id.* (internal quotation marks omitted). More particularly, "'an issue is genuine if reasonable persons could disagree' about the issue." *Id.* (quoting *Bankers Ins. Co.*, 2024-0386, p. 14, ___ So.3d at ___, 2024 WL 5116650, at *6). If, however, "'reasonable persons could reach only one conclusion' on [an] issue based on 'the state of the evidence,'" then "[t]here is no need for a trial on [that] issue." *Id.* (second alteration in original). A fact is material when its "existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* Further, a fact is material when it "potentially insure[s] or preclude[s] recovery, affect[s] a litigant's ultimate success, or determine[s] the outcome of the legal dispute." *Id.* (alterations in original). In "determin[ing] whether 'a particular disputed fact is material or not,' the court must look to 'the substantive law applicable to the case . . . because the applicable substantive law determines materiality.'" *Id.* (second alteration in original).

If the movant proves that there is no genuine issue of material fact, thereby satisfying the initial burden of proof, at that point "the burden shifts to the party opposing summary judgment to present factual support sufficient to show he [or she] will be able to satisfy the evidentiary burden at trial." *Id.* at pp. 12-13, ___ So.3d at ___, 2025 WL 1201891, at *6 (quoting *Bankers Ins. Co.*, 2024-0386, p. 14, ___ So.3d at ___, 2024 WL 5116650, at *7). If the party moving for summary judgment "will not bear the burden of proof at trial on the issue that is before the

court on the motion for summary judgment," then "the mover's burden on the motion does not require him [or her] to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). Only once "the motion has been made and properly supported" does "[t]he burden shift[] from the mover to the adverse party." *Anderson*, 2023-0814, 2024-0808, p. 13, ___ So.3d at ___, 2025 WL 1201891, at *6 (quoting *Bankers Ins. Co.*, 2024-0386, p. 15, ___ So.3d at ___, 2024 WL 5116650, at *7).

When the burden shifts, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). To produce such support, "[the] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided . . . , must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). In "consider[ing] a motion for summary judgment, 'the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent.'" *Anderson*, 2023-0814, 2024-0808, p. 13, ___ So.3d at ___, 2025 WL 1201891, at *7 (quoting *Bankers Ins. Co.*, 2024-0386, p. 15, ___ So.3d at ___, 2024 WL 5116650, at *7). Once the burden shifts, "summary judgment, if appropriate, shall be rendered against" the party opposing the motion for summary judgment if that party has failed to "set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). This is because if "the party opposing the motion for summary judgment

11

fails to provide factual evidence sufficient to establish that he [or she] will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment is appropriate." *Anderson*, 2023-0814, 2024-0808, p. 14, ___ So.3d at ___, 2025 WL 1201891, at *7 (alteration in original) (quoting *Bankers Ins. Co.*, 2024-0386, p. 15, ___ So.3d at ___, 2024 WL 5116650, at *7).

On appeal, appellate courts review a trial court's ruling on a motion for summary judgment *de novo* and utilize "the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Id.* (quoting *Bankers Ins. Co.*, 2024-0386, p. 16, ___ So.3d at ___, 2024 WL 5116650, at *7). That is, in ascertaining whether summary judgment was appropriate, an appellate court considers the same questions as the trial court, particularly "whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* With these principles in mind, we consider whether the trial court properly granted Defendants' Motion for Summary Judgment.

### Liability Against Public Bodies

Louisiana Revised Statutes 9:2800 provides, in pertinent part:[3]

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> . . . .
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of

---

[3] Louisiana Revised Statutes 9:2800 is titled "Limitation of liability for public bodies." It is applicable to the matter *sub judice* because the Mendozas brought suit against the City and the NOAB.

the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

D. Constructive notice shall mean the existence of facts which infer actual knowledge.

. . . .

G. (1) "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.

In interpreting La. R.S. 9:2800, this Court has outlined the elements a plaintiff must prove in order to prevail in a claim against a public entity, namely "1) the public entity's custody or ownership of the defective thing; 2) the defect created an unreasonable risk of harm; 3) the public entity's actual or constructive notice of the defect and failure to take corrective action within reasonable time; and 4) causation." *Amedee v. Aimbridge Hospitality, LLC*, 2020-0590, p. 5 (La. App. 4 Cir. 12/16/22), 354 So.3d 250, 253 (citing *Beteta v. City of New Orleans*, 2008-0542, p. 2 (La. App. 4 Cir. 1/28/09), 4 So.3d 908, 910). A plaintiff's "failure on any one" element "is fatal to the case." *Noland v. Lenard*, 55,342, p. 6 (La. App. 2 Cir. 11/15/23), 374 So.3d 1133, 1138 (citing *Netecke v. State ex rel. DOTD*, 1998-1182, 1197, p. 7 (La. 10/19/99), 747 So.2d 489, 494). As this Court has further explained, the liability elements a plaintiff must prove in a suit against a public entity "under La. R.S. 9:2800 are essentially the same as" the elements of proof required under La. C.C. arts. 2317 and 2317.1. *George v. ABC Ins. Co.*, 2022-0148, p. 7 (La. App. 4 Cir. 10/26/22), 351 So.3d 447, 453 (citing *Lomax v. Transdev Servs., Inc.*, 2020-0620, p. 7 (La. App. 4 Cir. 10/20/21), 331 So.3d 368, 373 n.9).

### 1. The Public Entity's Custody or Ownership of the Defective Thing

The first element a plaintiff must prove in order to prevail in a claim against a public entity is whether the public entity had custody or ownership of the defective thing. Neither the Mendozas nor Defendants dispute that the NOAB owned the subject ramp because it was located at the Airport, which is under the NOAB's control. Moreover, during Ms. Wilcut's deposition, she answered affirmatively when asked, "Would you agree that the [NOAB] had control of the area where the incident occurred -- had control and maintenance responsibilities as it relates to where the incident occurred?" Accordingly, we find this liability element has been satisfied.

### 2. Whether the Defect Created an Unreasonable Risk of Harm

Next, we must consider whether the ramp created an unreasonable risk of harm. "Whether a thing presents an unreasonable risk of harm is a matter particular to the circumstances of each case." *Callier v. Lafayette City-Par. Consolidated Gov.*, 2021-598, p. 17 (La. App. 3 Cir. 3/3/22), 351 So.3d 370, 382 (quoting *Morell v. City of Breaux Bridge*, 1994-1378, p. 5 (La. App. 3 Cir. 5/31/95), 660 So.2d 882, 884). As this Court recently explained, "[t]he mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition." *Haynes v. Sewerage & Water Bd. of New Orleans*, 2023-0678, p. 23 (La. App. 4 Cir. 7/31/24), 399 So.3d 626, 642 (alteration in original) (quoting *Cavet v. ABC Ins. Co.*, 2020-0454, p. 14 (La. App. 4 Cir. 4/21/21), 316 So.3d 91, 101). Instead, "an unreasonably dangerous condition is present only if the 'condition or imperfection . . . poses an unreasonable risk of injury to persons exercising ordinary care and prudence.'" *Id.* (alteration in original) (quoting *Cavet*,

14

2020-0454, p. 14, 316 So.3d at 102). To determine whether a condition or imperfection poses an unreasonable risk of harm,

> The Louisiana Supreme Court "has adopted a risk-utility balancing test, wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair." This risk-utility balancing test requires consideration of four factors: "[a.] the utility of the complained-of condition; [b.] the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; [c.] the cost of preventing the harm; and [d.] the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature."

*Id.* at p. 23, 399 So.3d at 643 (alteration in original) (internal citations omitted). We address each of these factors in turn.

### a. Utility of the Complained-Of Condition

Discussing the first factor, the utility of the complained-of condition, the Louisiana Supreme Court has held "that if a defect 'was meant to be there, it often will have social utility, and in the balancing test, weigh against a finding that the premises was unsafe.'" *Haynes*, 2023-0678, pp. 23-24, 399 So.3d at 643 (quoting *Farrell*, 2022-00849, p. 7, 359 So.3d at 474). Yet, if "'[t]he alleged defect was not intended nor present by design,' then this weighs against a finding of utility." *Id.* (alteration in original). Here, the ramp itself has utility (providing individuals who work at the Airport—like Mr. Mendoza—the ability to deliver goods), but there is no evidence the deviation (i.e., the space between the top of the ramp and the landing) was intended to be there or present by design, nor do we otherwise find any usefulness to its presence. Rather, it thwarted those trying to use the ramp for its intended purpose, i.e., to smoothly load and transport goods. This factor weighs against Defendants.

15

***b. Likelihood and Magnitude of the Harm, Including the Obviousness and Apparentness of the Condition***

In *Haynes*, this Court provided the following summary of this factor:

> The likelihood of the harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably dangerous. The magnitude of harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each.

*Rainey v. Knight*, 2023-0133, p. 8 (La. App. 1 Cir. 11/3/23), 378 So.3d 116, 124. Additionally, the risk-utility balancing test includes consideration of the obviousness and apparentness of the condition because Louisiana jurisprudence has previously held that "a defendant generally does not have a duty to protect against an open and obvious hazard." *George v. ABC Ins. Co.*, 2022-0148, p. 8 (La. App. 4 Cir. 10/26/22), 351 So.3d 447, 454 (citing *Scarberry v. Entergy Corp.*, 2013-0214, p. 10 (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 204). For a defendant to not have a duty to protect, the hazard must "be one that is open and obvious to all, i.e., everyone who may potentially encounter it." *Id.* at p. 9, 351 So.3d at 454. The open and obvious inquiry "focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge." *Id.* at p. 9, 351 So.3d at 454-55 (quoting *Hooper v. Brown*, 2015-0339, p. 9 (La. App. 4 Cir. 5/22/15), 171 So.3d 995, 1001). That is, a plaintiff's knowledge about a defect "is not necessarily conclusive that the defective condition was open and obvious to all who encountered it." *Id.* at p. 10, 351 So.3d at 455 (citing *Romain v. Brooks Restaurants, Inc.*, 2020-0243, p. 5 (La. App. 4 Cir. 11/18/20), 311 So.3d 428, 432).

In discussing the open and obviousness inquiry, however, the Louisiana Supreme Court has recently described it as a "figment of judicial imagination" and more narrowly held that "[t]here is, *with limited exception*, the duty to exercise reasonable care and to keep that which is within our custody free from an unreasonable risk of harm." *Farrell*, 2022-00849, p. 8, 13, 359 So.3d at 475, 478 (emphasis added). In fact, the Louisiana Supreme Court even stated that "it is inaccurate to profess that a defendant generally does not have a duty to protect against an open an[d] obvious condition" because this inquiry "falls within the ambit of the second factor of the risk/utility balancing test, which considers the likelihood and magnitude of the harm, and it is not a consideration for determining the legal question of the existence of a duty." *Id.* at pp. 12-13, 359 So.3d at 478.

16

2023-0678, pp. 24-25, 399 So.3d at 643-44 (alterations in original).

Defendants contend this case is analogous to sidewalk defect cases. Because there are not many ramp-specific cases and this case involves a defect in a portion of concrete like the sidewalk cases, we find the reasoning in sidewalk defect cases to be helpful and analogous. *See generally Guilbeaux v. LUPO Enters., L.L.C.*, 2021-0053 (La. App. 4 Cir. 5/19/21), 321 So.3d 447 (wherein this Court included sidewalk defect cases in its analysis of a deviation in an expansion joint located at the entrance/exit ramp of a grocery store). "[N]ot every crack in a sidewalk results in liability." *Joseph v. City of New Orleans*, 2002-1996, p. 6 (La. App. 4 Cir. 3/5/03), 842 So.2d 420, 424 (citations omitted). As the Louisiana Supreme Court has stated, there is no fixed rule in deciding whether a defect in a sidewalk is unreasonably dangerous. *Chambers v. Vill. of Moreauville*, 2011-898, p. 5 (La. 1/24/12), 85 So.3d 593, 598. However, "[o]ne consideration that" the Louisiana Courts of Appeal and the Louisiana Supreme Court have "addressed in [the] risk-utility balancing test [is] the size of the sidewalk deviation." *Brown v. City of Shreveport*, 50,402, p. 4 (La. App. 2 Cir. 3/16/16), 188 So.3d 341, 345 (citing *Chambers*, 2011-898, p. 6, 85 So.3d at 598). Even when a "cracked area of the sidewalk was not hidden and could have been avoided if noticed by the plaintiff," if "the cracked portion of the sidewalk encountered by [the] plaintiff was elevated enough," then this can "cause a hazard," especially if the view of the cracked portion is diminished for some reason. *Garcie v. Pasquier*, 46,208, pp. 6-7 (La. App. 2 Cir. 5/18/11), 70 So.3d 11, 15. That is, the height of the raised portion or separation informs whether the defect presented an unreasonable risk of harm. In fact, the Louisiana Supreme Court has instructed that "[t]he size of a deviation is a

17

*necessary* consideration in determining the risk of harm created by a sidewalk defect." *Chambers*, 2011-898, p. 6, 85 So.3d at 598 (emphasis added).

Recently, in cases involving a deviation of fewer than two inches, the courts have held this represents a trip hazard but not an unreasonable risk of harm. *See Chambers*, 2011-898, p. 6, 85 So.3d at 598 (holding "the one-and-one-quarter to one-and-one-half inch ledge [was] relatively small" and that the small size of the ledge, among other reasons, did not result in an unreasonable risk of harm); *Guilbeaux*, 2021-0053, p. 10, 321 So.3d at 454 (holding "[a] deviation in an expansion joint of ¾ of an inch constitutes a 'minor' deviation in [a] ramp; therefore, it does not present an unreasonable risk of harm"); *Graham v. City of Shreveport*, 44,994, p. 8 (La. App. 2 Cir. 1/27/10), 31 So.3d 526, 532 (finding no unreasonable risk of harm regarding a raised portion of concrete slab of less than two inches) (citation omitted); *Boyle v. Bd. of Supervisors, La. State Univ.*, 1996-1158, pp. 4, 7 (La. 1/14/97), 685 So.2d 1080, 1083-84 (wherein the trial court found a depression in a sidewalk "to be anywhere from one-half inch to one inch or more," and the Louisiana Supreme Court held this did not present an unreasonable risk of harm).

By contrast, in cases involving a separation of at least two inches or greater, the courts have upheld a trial court's determination that this presented an unreasonable risk of harm. *See Brown*, 50,402, pp. 5-6, 188 So.3d at 345-46 (wherein the "trial court accepted the circumstantial evidence tending to indicate the sidewalk deviation was at least two inches," and the Louisiana Second Circuit Court of Appeal found no "manifest error in the trial court's finding that this particular defect created an unreasonable risk of harm"); *Joseph*, 2002-1996, p. 6, 842 So.2d at 424-25 (holding the trial court was not manifestly erroneous "in

18

finding the sidewalk defect at issue in this case, which [was] over three inches in size, created an unreasonable risk of harm"); *Butkiewicz v. Evans*, 2006-236, p. 7 (La. App. 5 Cir. 9/26/06), 943 So.2d 509, 514 (finding no error in the trial court's determination that a three-inch deviation created an unreasonable risk of harm).

The summary judgment evidence established Mr. Mendoza knew about the height differential between the top of the ramp and the landing—he admitted as much during his deposition. However, Mr. Mendoza's knowledge of the defect was not enough to make it "open and obvious" such that Defendants did not owe him a duty. Instead, the defective condition needed to be open and obvious to *anyone* who encountered it. The summary judgment evidence did not establish the size of the height differential between the top of the ramp and the landing step. As stated previously, the Louisiana Supreme Court has stated, "the size of a deviation is a *necessary* consideration in determining the risk of harm created by a sidewalk defect." *Chambers*, 2011-898, p. 6, 85 So.3d at 598 (emphasis added). Therefore, without information (whether direct or circumstantial evidence) about the size of this deviation, we do not have what is necessary to determine whether the deviation constituted an unreasonable risk of harm. Because Defendants did not provide such information in their Motion for Summary Judgment, they failed to prove there is no genuine issue of material fact regarding this factor in the risk-utility balancing test. Without this information, this Court cannot determine whether the height difference was likely to cause harm and whether it would have been open and obvious to *anyone* who encountered it, not just Mr. Mendoza.

Moreover, even though the ramp's deviation "was not hidden and could have been avoided if noticed by" Mr. Mendoza, if "the cracked portion of the [concrete] . . . was elevated enough," then this would have constituted "a hazard,"

especially because Mr. Mendoza's view—and that of other similarly situated workers—would likely be blocked by the goods they were delivering. *Garcie*, 46,208, pp. 6-7, 70 So.3d at 15. We find there remains a genuine issue of material fact about whether the height of the deviation rendered it an unreasonably dangerous condition. Mr. Mendoza's knowledge about the defect in the ramp cannot serve as a basis to dismiss his claims on summary judgment per *Farrell*. Rather, it should only come into play in the ultimate allocation of fault. *See Farrell*, 2022-00849, pp. 13-14, 359 So.3d at 478 (holding that a "plaintiff's knowledge is appropriately considered in assessing fault, but is not appropriate for summary judgment proceedings").

### c. Cost of Preventing the Harm

Next, we must balance the risk of harm presented against the cost and feasibility of repair. The summary judgment evidence established that the ultimate cost of repairing the subject ramp was likely $1,248.06 per Ms. Wilcut's deposition. Considering the resources of the airport and the injuries suffered by Mr. Mendoza, this is not an unreasonable amount for the NOAB to have spent to repair the ramp, such that this factor weighs against Defendants.

Though, as discussed more fully below, the ramp repair occurred as part of a larger, more expensive concrete repair project in Concourse C, it is not as if Defendants contended or established that there were multiple such ramps requiring like repairs, such that repairing all of them would become cost prohibitive. Instead, the ramp repair ultimately occurred as part of a project that the NOAB was already undertaking anyway. For example, in *LeBlanc v. City of Abbeville*, the City "argue[d] that since it has thousands of storm grates in place as part of its drainage system, the cost to replace each one at any showing of rust would be cost

prohibitive." 2018-206, p. 9 (La. App. 3 Cir. 10/17/18), 259 So.3d 372, 384. The trial court and the Louisiana Third Circuit Court of Appeal countered, "it [was] not necessary for all of the storm grates to be replaced as soon as they beg[a]n to exhibit signs of rust." *Id.* Instead, "the City had a duty to replace this particular storm grate [through which the plaintiff fell and injured his leg] when it became, or should have become in the exercise of reasonable care, obvious that it needed to be replaced." *Id.*

Likewise, the NOAB had a duty to replace this particular ramp when it became, or should have become in the exercise of reasonable care, obvious that it needed to be replaced. It is clear from the picture of the ramp in the summary judgment evidence that the concrete of the ramp was compromised. Thus, the NOAB failed to take the relatively inexpensive precaution of repairing this particular ramp. We acknowledge, however, that the summary judgment evidence establishes the NOAB could not immediately repair this ramp for a reason other than cost—Ms. Wilcut testified about the months-long public bid process. We note that during the public bid process, the NOAB could have taken other steps that were inexpensive and did not require the public bid process, such as painting the deviation yellow; placing warning signs, cones, or barrels to alert workers to the state of the ramp; or closing the ramp entirely and requiring Airport workers to use an alternate route. Yet, the NOAB did not do anything like this until after Mr. Mendoza's accident. Accordingly, we find this factor weighs against Defendants in the risk-utility balancing test.

### d. Nature of Plaintiff's Activities in Terms of Social Utility or Whether the Activities Were Dangerous by Nature

The fourth and final factor of the risk/utility balancing test involves a consideration of the nature of the plaintiff's activity in terms of social utility or whether the activities were dangerous by nature. In this case, Mr. Mendoza was transporting goods for consumers from one section of the Airport to another, which activity was a task required by his employment with Sodexo. This activity had social utility and was not dangerous by nature.

After applying the risk/utility balancing test, we conclude Defendants failed to prove there was no genuine issue of material fact as to whether the condition of the ramp created an unreasonable risk of harm. Next, we turn to the third element of a custodial negligence claim.

### 3. Whether Defendants Had Actual or Constructive Notice and Failed to Take Corrective Action within Reasonable Time

The third custodial negligence element is whether Defendants had actual or constructive knowledge of the defect and whether they failed to take corrective action within a reasonable time. In their response to an interrogatory, which the Mendozas attached as an exhibit to their Opposition, Defendants admitted that they knew about the condition of the concrete in the subject area on October 22, 2022, which was about one month before Mr. Mendoza's alleged accident. Accordingly, the summary judgment evidence established Defendants had actual notice of the defect in the ramp. We must determine whether they failed to take corrective action within a reasonable time, i.e., whether one month was a sufficient amount of time for repair.

During Ms. Wilcut's deposition, she explained that the ultimate repair to the subject ramp was part of a larger project of concrete repairs, which was the result

of a months-long public bid process. Accordingly, based on Ms. Wilcut's deposition, the NOAB likely could not have repaired the subject ramp between October 22, 2022 (upon learning of the state of the ramp), and November 21, 2022 (the date of Mr. Mendoza's accident).

However, according to Ms. Wilcut's deposition, the NOAB added yellow warning paint to highlight the defect in the ramp only two days after Mr. Mendoza's accident. She clarified this work did not require the public bidding process because airport employees were able to perform the work themselves. Accordingly, as discussed previously, even though the repair work likely could not have occurred within the one-month time period, the warning paint could have been added or other precautions could have been taken during the one-month time period. We find that one month was a reasonable amount of time within which to take the corrective action of adding a warning about the condition of the ramp.

### 4. Causation

The fourth and final custodial negligence element is causation, i.e., whether the defect caused the plaintiff's damages. In opposing Defendants' Motion for Summary Judgment, the Mendozas did not offer any medical records or other evidence from Mr. Mendoza's treating physicians about the injuries he allegedly sustained; but they did offer his deposition testimony. Mr. Mendoza testified that during his accident, he tore his quadriceps in his left leg; subsequently underwent surgery to repair the tear; and was still attending physical therapy appointments twice a week at the time of his deposition. Additionally, Mr. Mendoza explained that since the accident, he walks with a limp; received restrictions on his activity from his physical therapist; cannot perform certain household chores and has difficulty performing other household chores; and could not participate in activities

with his family. Defendants presented no evidence in conjunction with their Motion for Summary Judgment to refute Mr. Mendoza's testimony.

In light of the foregoing analysis, we find there is a genuine issue of material fact regarding whether the defective ramp was an unreasonable risk of harm, such that the trial court should not have granted Defendants' Motion for Summary Judgment.

## Whether Mrs. Mendoza's Claims and the Mendozas' Claims against ACE Were Appealed and Are Subject to Reconsideration

In the final argument, Defendants contend Mrs. Mendoza's loss of consortium claims and the Mendozas' claims against ACE were not appealed and are not subject to consideration by this Court. In particular, they argue:

> While Plaintiffs-Appellants['] instant appeal is styled as being brought by both Oscar and Carrie Mendoza, the dismissal of Carrie Mendoza's loss of consortium claim is not briefed as an assignment of error or issue presented for review in the Plaintiffs-Appellants' instant appeal, as would be required by Uniform Rule of Louisiana Courts of Appeal 2-12.4(A)(5)-(6). Thus, it is not subject to review or reversal herein. The Trial Court's dismissal of this claim is final and conclusive. Likewise, the dismissal of Plaintiffs-Appellants' claim against ACE was not briefed as an assignment of error or issue presented for review, and is thus not reviewable or reversible herein, and is a final and conclusive judgment.

We disagree with this argument. As Defendants correctly observe in their brief, Mrs. Mendoza's claim for loss of consortium damages is a derivative claim because it derives from the personal injuries sustained by the primary victim, Mr. Mendoza. *Ferrell v. Fireman's Fund Ins. Co.*, 1996-3028, p. 11 (La. 7/1/97), 696 So.2d 569, 576. Defendants' Motion for Summary Judgment concerned whether the NOAB and the City had liability for Mr. Mendoza's accident. The subject judgment dismissed both Mr. Mendoza's and Mrs. Mendoza's claims on the basis the NOAB and the City did not have liability for Mr. Mendoza's accident; and both

Mr. and Mrs. Mendoza seek reversal of the entire grant of summary judgment, i.e., reversal of the dismissal of both of their claims. Whether the NOAB and the City have liability for Mr. Mendoza's accident is a threshold issue for the trier of fact to determine before even considering whether either of the Mendozas is entitled to damages and, if so, to how much each is entitled. Because Mrs. Mendoza's claim for loss of consortium damages derives from Mr. Mendoza's claims, Mrs. Mendoza's argument as to why the NOAB and the City are liable—the ramp constituted an unreasonable risk of harm—is the same as Mr. Mendoza's argument. Thus, while Mrs. Mendoza brought this appeal along with Mr. Mendoza, there was no need for her to separately brief the liability issue because doing so would have been repetitive. Rather, the heart of Mrs. Mendoza's claim and the manner in which her claim is distinct from Mr. Mendoza's is the amount to which she may be entitled to damages; and, to discuss her damages at this point (or even Mr. Mendoza's) would have been premature given that the dispute at this phase of the proceedings was concerning the preliminary issue of liability.

Moreover, Defendants cite to Rule 2-12.4 of the Uniform Rules of the Courts of Appeal as support for their contention that Mrs. Mendoza's claim is not subject to review or reversal in this appeal. However, Uniform Rule 2-12.4(B)(4) states, "All assignments of error and issues for review shall be briefed. The court *may* deem as abandoned any assignment of error or issue for review which has not been briefed." (Emphasis added.) As this Court recently stated, "the Louisiana Supreme Court has explained, a 'cardinal rule of statutory interpretation [is] that the word "may" is permissive.'" *Benjamin Pri-Tal v. Progressive Prop. Ins. Co.*, 2024-0531, p. 8 (La. App. 4 Cir. 5/14/25), ___ So.3d ___, ___, 2025 WL 1414743, at *4 (quoting *Pierce Founds., Inc. v. Jaroy Constr., Inc.*, 2015-0785, p. 8 (La.

5/3/16), 190 So.3d 298, 304). Because Rule 2-12.4(B)(4) uses the permissive language "may," whether to consider an issue abandoned is up to the discretion of this Court. Thus, not only do we find Defendants' characterization of the Mendozas' brief to be inaccurate, even if the Mendozas had failed to brief Mrs. Mendoza's claim, we retain the discretion to review it anyway.

Similarly, we disagree with Defendants' arguments as to ACE. Again, the Motion for Summary Judgment concerned whether the NOAB and the City had liability for Mr. Mendoza's accident. The subject judgment dismissed both Mr. and Mrs. Mendoza's claims on the basis the NOAB and the City did not have liability for Mr. Mendoza's accident, a finding which rendered ACE—as insurer—not responsible for paying any damages to the Mendozas. Essentially, ACE's role in this litigation is analogous to Mrs. Mendoza's derivative claim: ACE's responsibility for paying damages only comes into play if the NOAB and the City are first deemed liable. Now that we have determined there is a genuine issue of material fact that precluded summary judgment on the issue of liability, the trier of fact may yet determine that the NOAB and the City had liability for Mr. Mendoza's accident, in which case ACE would be responsible for paying any damages awarded to Mr. Mendoza and to Mrs. Mendoza. The Mendozas did not need to separately brief their claim against ACE because the summary judgment and this appeal were focused on the threshold issue of whether the ramp constituted an unreasonable risk of harm, such that the NOAB and the City should or should not be held liable. Had ACE filed its own motion for summary judgment or had the trial court dismissed the Mendozas' claims against ACE for other reasons, the result may be different in that the Mendozas may have needed to brief their claim against ACE. However, the trial court dismissed the Mendozas' claims

against ACE for the same reasons it dismissed the Mendozas' claims against the NOAB and the City, i.e., after finding the ramp did not constitute an unreasonable risk of harm because it was open and obvious, such that the NOAB and the City were not liable for Mr. Mendoza's accident. In sum, we find no merit to Defendants' argument regarding Mrs. Mendoza's claim and the Mendozas' claims against ACE.

## Sodexo

Though neither the Mendozas nor the Defendants discussed this in their respective briefs, we address another issue: Sodexo did not join the Mendozas' appeal or separately appeal the trial court's judgment. Having found that there remains a genuine issue of material fact and that the trial court should not have granted Defendants' Motion for Summary Judgment, we must determine whether our holding also applies to Sodexo. If an intervenor does not appeal a trial court's judgment dismissing its claim, then that judgment becomes final as to the intervenor. *Veazey v. Avoyelles Par.*, 476 So.2d 1057, 1060 (La. App. 3d Cir. 1985) (citations omitted). *See also Johnson v. Sandifer*, 56 So.2d 762, 766 (La. App. 2d Cir. 1952) (explaining that the "[i]ntervenor's . . . failure to appeal . . . has . . . concluded the legal controversy as far as she is concerned"). In light of the foregoing jurisprudence, we find the trial court's July 15, 2024 judgment is final as to Sodexo.

### Failure to Specify Whether the Dismissal was With or Without Prejudice

Before concluding this Opinion, we must address another matter. The trial court's July 15, 2024 judgment dismissed the Mendozas' and Sodexo's claims but did not specify whether the dismissal was with or without prejudice. As this Court has explained, "a summary judgment is, by nature, a dismissal with prejudice."

27

*Jones v. Whips Electric, LLC.*, 2023-0357, pp. 6-7 (La. App. 4 Cir. 11/15/23), 377 So.3d 788, 793-94 (citing *Vega v. Wal-Mart Stores, Inc.*, 2003-2239, pp. 2-3 (La. App. 1 Cir. 9/17/04), 888 So.2d 242, 243). This is because a summary judgment constitutes "the procedural equivalent of a trial and is an adjudication of the claim on the merits." *Id.* at p. 6, 377 So.3d at 793 n.9 (citation omitted). "By its nature the granting of summary judgment indicates that there is nothing left to determine and the law requires judgment be entered for one party." *Id.* at p. 7, 377 So.3d at 794 (quoting *Vega*, 2003-2239, p. 3, 377 So.3d at 794). Thus, the trial court's grant of Defendants' Motion for Summary Judgment was, by its very nature, a dismissal with prejudice.

If a trial court grants a summary judgment, dismisses the underlying claims without prejudice, and the appellate court disagrees with the grant of summary judgment, then the appellate court need not amend the trial court judgment in light of the appellate court's decision to reverse and remand the matter. *See Jones*, 2023-0357, p. 7, 377 So.3d at 794. The situation in the matter *sub judice* is not the exact same as in *Jones* wherein the trial court dismissed the claims without prejudice, whereas here the trial court did not specify whether the dismissal was with or without prejudice. Nonetheless, we find *Jones* to be analogous and proceed with the same course of action. Because we find there remained genuine issues of material fact, we reverse the trial court's July 15, 2024 judgment insofar as it granted Defendants' Motion for Summary Judgment and dismissed the Mendozas' claims. In light of our reversal and remand, there is no need for this Court or the trial court to amend the judgment with regard to the Mendoza's claims.

If, however, a trial court grants a summary judgment, dismisses the underlying claims without prejudice, and the appellate court agrees with the grant

of summary judgment, then the appellate court should affirm but amend the judgment to reflect that the claims were dismissed with prejudice. *See Estate of Blankenship v. La. Home Care Grp., Inc.*, 49,856, p. 6 (La. App. 2 Cir. 6/24/15), 166 So.3d 461, 464-65 (quoting *Jackson v. State Farm Mut. Auto. Ins. Co.*, 27,611, pp. 4-5 (La. App. 2 Cir. 12/6/95), 665 So.2d 661, 664). Again, the present situation is not the exact same as in *Estate of Blankenship* wherein the Louisiana Second Circuit Court of Appeal agreed with the grant of summary judgment, whereas here we disagree with the grant of summary judgment. However, we find *Estate of Blankenship* to be analogous and proceed with the same course of action. Because we have concluded the trial court's July 15, 2024 judgment is final as to Sodexo in light of Sodexo's failure to appeal, we amend the judgment to state that the trial court's dismissal of Sodexo's claim was with prejudice. As amended, we affirm that part of the judgment.

## DECREE

For the foregoing reasons, we reverse the trial court's July 15, 2024 judgment insofar as it granted Defendants' Motion for Summary Judgment and dismissed the Mendozas' claims; and we remand this matter for further proceedings. Insofar as the July 15, 2024 judgment granted Defendants' Motion for Summary Judgment and dismissed Sodexo's claims, we amend that part of the judgment to specify that the dismissal was with prejudice. As amended, we affirm that part of the judgment.

**REVERSED IN PART AND REMANDED; AMENDED IN PART AND AFFIRMED AS AMENDED**